*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ANTONIO JACKSON,

      Defendant-Appellant.

UNPUBLISHED
February 25, 2021

No. 344242
Wayne Circuit Court
LC No. 11-012637-01-FC

Before: CAVANAGH, P.J., and SERVITTO and CAMERON, JJ.

PER CURIAM.

Defendant, Antonio Jackson, was convicted in 2012 of first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b. Following a remand from this Court, Jackson was resentenced as a second habitual offender, MCL 769.10, to 30 to 50 years' imprisonment for the CSC-I conviction. Jackson again appeals, and we affirm.

## I. BACKGROUND

This case concerns Jackson's sexual assault of the victim. The underlying facts are as follows:

This case arises from events that occurred in 1997, though no charges were filed until 2011. According to the victim, an unknown man wielding a firearm entered the apartment where she was staying with her sister and sexually assaulted her as she lay in bed between her two young children. After the man left, the victim and her sister called 911, and the victim was taken to the hospital, where a rape kit was collected. In 2011, DNA analysis was performed on the evidence collected in the rape kit, and [Jackson] was identified from the analysis. The charges were filed in September 2011. At trial, the issue was consent. [Jackson] claimed that he had consensual sexual intercourse with the victim after they met in a parking lot and discussed a payment of $500 for sex. He claimed that this occurred in a different apartment and that he never went to the apartment where the victim was staying with her sister. Apparently to explain the claim of sexual assault when the act was consensual, [Jackson] testified that he left without paying and never saw the victim

-1-

again. [*People v Jackson (Jackson I)*, unpublished per curiam opinion of the Court of Appeals, issued March 6, 2014 (Docket No. 311557), p 1.]

In 2012, a jury convicted Jackson of first-degree home invasion, MCL 750.110a(2), and CSC-I. Jackson was acquitted of possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b, and possession of a firearm by a convicted felon ("felon-in-possession"), MCL 750.224f. Jackson was initially sentenced to 10 to 20 years' imprisonment for the home-invasion conviction and to 30 to 50 years' imprisonment for the CSC-I conviction. Jackson appealed. This Court affirmed Jackson's conviction of CSC-I, but vacated Jackson's first-degree home-invasion conviction because the statute of limitations had expired. *Jackson I*, unpub op at 2, 4. This Court remanded the matter for resentencing. *Id*. at 4. Jackson filed an application for leave to appeal this Court's decision to our Supreme Court.

While Jackson's application for leave to appeal was pending, the trial court resentenced Jackson on May 30, 2014. The trial court again sentenced Jackson to 30 to 50 years' imprisonment for the CSC-I conviction. Thereafter, Jackson's application for leave to appeal was denied, *People v Jackson*, 497 Mich 869; 853 NW2d 351 (2014), and Jackson appealed from the May 30, 2014 judgment of sentence. This Court vacated the sentence, holding that, "[b]ecause [Jackson's] appeal to our Supreme Court was still pending when the trial court imposed its sentence in violation of MCR 7.302(C)(5), we are constrained to vacate and remand for resentencing." *People v Jackson*, unpublished per curiam opinion of the Court of Appeals, issued December 8, 2015 (Docket No. 323165), p 1.

In December 2017, the trial court held the resentencing hearing. During the hearing, the parties disputed whether offense variable ("OV") 1 and OV 2 of the former advisory judicial sentencing guidelines were properly scored. Over Jackson's objections, the trial court assessed 15 points for OV 1 and 25 points for OV 2. The trial court again sentenced Jackson to 30 to 50 years' imprisonment for the CSC-I conviction. In doing so, the trial court stated as follows:

> What [Jackson] did was horrific. To break into a home in the middle of the night, into the sanctity of the person's home and attack them in their bed while they're sleeping, and engage in a criminal sexual conduct, these are things that a civilized society cannot tolerate . . . . As I say, it was a unanimous verdict. It's not easy to get a unanimous verdict. So[,] the evidence obviously was sufficient. . . .

> I have heard, anecdotally, that there was no remorse shown at the time. Obviously, we went to trial in an effort to get a not guilty verdict. But the jury saw the facts the way they did and [the predecessor sentencing judge] sentenced [Jackson] to 30 to 50 years for the crime of criminal sexual conduct first degree. And based upon everything that I have seen, I'm not in a position to indicate or say that [the judge] has done anything erroneous. [The predecessor sentencing judge's] result was reasonable within the realm of possibilities. And as I look at this now, under [*People Lockridge*, 498 Mich 358; 870 NW2d 502 (2015)], the guidelines are advisory. But as I look at the facts, I do not find that [the judge's] sentence of

30 to 50 years was unreasonable. It does appear to be reasonable and proportionate to the facts and circumstances.

* * *

[T]he [c]ourt places particular importance on this sentence on the nature of the offense and the impact that it has had on the lives, the victim and her children. And I think all we have to do is take a look at the victim's impact statement in the Presentence Investigation Report to understand . . . [that Jackson's] victims have spent time in their own special kind of prison. They have serious problems . . . .

So I do believe that this sentence provides for deterrence, it's a protection of society.

Jackson filed a delayed application for leave to appeal, which this Court denied. *People v Jackson*, unpublished order of the Court of Appeals, entered October 25, 2018 (Docket No. 344242). Jackson appealed to our Supreme Court, which remanded the matter to this Court "for consideration as on leave granted." *People v Jackson*, 505 Mich 874; 935 NW2d 362 (2019). In doing so, our Supreme Court cited *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019). *Jackson*, 505 Mich at 874.

## II. STANDARDS OF REVIEW

We review constitutional issues, such as due process challenges, de novo. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). Under the judicial guidelines, the trial court's sentencing decision is to be reviewed for an abuse of discretion, applying the principle of proportionality standard set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). *People v Babcock*, 469 Mich 247, 253-254; 666 NW2d 231 (2003). Furthermore, as it relates to the judicial guidelines, "[a]ppellate review of guidelines calculations is limited, and a sentencing court has discretion in determining the number of points to be scored provided there is evidence on the record that adequately supports a particular score." *People v Cain*, 238 Mich App 95, 129-130; 605 NW2d 28 (1999) (quotation marks and citation omitted).

## III. ANALYSIS

### A. SENTENCING—CONSIDERATION OF ACQUITTED CONDUCT

Jackson argues that the trial court erred when it sentenced him. More specifically, Jackson argues that the trial court erred when it scored OVs 1 and 2 on the basis of acquitted conduct. We disagree.

As an initial matter, we note that the judicial guidelines apply to Jackson's offense because it was committed before January 1, 1999. MCL 769.34(1); *People v Reynolds*, 240 Mich App 250, 253-254; 611 NW2d 316 (2000). The judicial guidelines, which were used in Michigan courts from 1983 to 1998, were crafted by the Michigan Supreme Court and were promulgated by administrative order. *People v Hegwood*, 465 Mich 432, 438; 636 NW2d 127 (2001). As noted by the prosecutor, "because the recommended ranges found in the judicial guidelines were not the product of legislative action, a sentencing judge was not necessarily obliged to impose a sentence

-3-

within those ranges." *Id*. Thus, appellate courts will only offer relief "where (1) a factual predicate is wholly unsupported, (2) a factual predicate is materially false, and (3) the sentence is disproportionate." *People v Mitchell*, 454 Mich 145, 177; 560 NW2d 600 (1997).

In this case, however, Jackson does not argue that he has a cognizable appellate claim under *Mitchell*. Instead, Jackson raises a constitutional challenge under our Supreme Court's decision in *Beck*, 504 Mich at 629, which held that "reliance on acquitted conduct at sentencing is barred by the Fourteenth Amendment." "When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard." *Id*. at 626. However, "when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent." *Id*.

In *People v Roberts (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 339424); slip op at 5, rev'd by *People v Roberts*, ___ Mich ___ (Docket No. 161263, entered October 21, 2020), this Court inferred from *Beck* that "a sentencing court must consider a defendant as having undertaken no act or omission that a jury could have relied upon in finding the essential elements of any acquitted offense proved beyond a reasonable doubt." This Court further concluded that "*Beck* expressly permits trial courts to consider uncharged conduct and any other circumstances or context surrounding the defendant or the sentencing offense." *Roberts (On Remand)*, ___ Mich App at ___; slip op at 5. Specifically, the *Roberts* Court held as follows:

> Nothing in *Beck* precludes a sentencing court from generally considering the time, place, and manner in which an offense is committed. We conclude that *Beck* does not exclude from consideration the contextual fact that the acquitted conduct was committed by someone, so long as that conduct is not actually attributed to the defendant. [*Id*. at ___; slip op at 5.]

In a peremptory order, however, our Supreme Court reversed this Court's decision in *Roberts*, seemingly concluding that some contextual facts upon which this Court relied were, in fact, part of the conduct of which the defendant had been acquitted. *People v Roberts*, ___ Mich ___; ___ NW2d ___ (Docket No. 161263, entered October 21, 2020).[1] Based on our Supreme Court's decision to reverse *Roberts*, it appears that the prohibition in *Beck* extends to circumstances surrounding the sentencing offense if the circumstances concern acquitted conduct that the sentencing offense does not contemplate.

In this case, Jackson was charged with felon-in-possession, felony-firearm, CSC-I, and first-degree home invasion. At trial, the victim testified that, after her attacker entered her home in the early morning hours and got into bed with her and her young children, the attacker put a silver gun "to [her] head." The victim testified that, although it was dark in the room, she was able to see the gun. The victim testified that her attacker covered her eyes and removed some of her

---

[1] Peremptory orders from our Supreme Court are binding precedent "to the extent they can theoretically be understood, even if doing so requires one to seek out other opinions." See *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; 923 NW2d 607 (2018).

clothing in order to accomplish penetration. The victim's son, who was six years old in 1997, testified that he saw the victim's attacker holding a gun.

Jackson was charged under alternate theories of CSC-I and first-degree home invasion, some of which involved possession of a "weapon" or a "dangerous weapon." In relevant part, the jury was instructed that it could find Jackson guilty of first-degree home invasion if it determined that "when [Jackson] entered, was present in or was leaving the dwelling, he was armed with a dangerous weapon or [the victim] was lawfully present in the dwelling." The jury was also instructed that it could find Jackson guilty of CSC-I if it determined, in relevant part, that "the alleged sexual assault occurred under circumstances that also involved . . . the commission of home invasion," or that Jackson "was armed with . . . a weapon" or "with an object used or fashioned in a manner to lead [the victim] to reasonably believe that it was a weapon."

As already stated, Jackson was acquitted of felon-in-possession and felony-firearm, both of which require possession of a firearm. However, he was convicted of CSC-I and first-degree home invasion. The reason that the jury decided to acquit Jackson of felon-in-possession and felony-firearm but to convict Jackson of CSC-I and first-degree home invasion is not clear from the verdict form. It is possible that the jury concluded that Jackson possessed a "weapon" or a "dangerous weapon" that was not a firearm, that Jackson possessed an object used or fashioned in a manner to lead the victim to reasonably believe that it was a weapon, or that Jackson did not possess a weapon at all but nonetheless entered the victim's home when she was lawfully present therein. Nonetheless, because it is not clear from the record, we are constrained to presume under *Beck* that the jury determined that Jackson did not possess a firearm when he committed his crimes.

## 1. OV 1

The judicial sentencing guidelines state that OV 1 for the aggravated use of a weapon should be assessed at 15 points if there was "[a] firearm pointed toward victim or touching with another weapon[.]" Michigan Sentencing Guidelines (2d), p 44. Five points should be assessed if there was "[a] firearm displayed, implied, or possessed; any other weapon displayed[.]" *Id*. Zero points are to be assessed if there was "[n]o firearm discharged, displayed, implied, or possessed; no other weapon[.]" *Id*. Furthermore, "[a] firearm refers to an operational or nonoperational firearm, or any instrument fashioned to appear to be a firearm," and a trial court should assess five points if "an offender uses an object in his or her pocket to suggest the presence of a firearm." *Id*.

At the resentencing hearing, after Jackson objected to the trial court assessing 15 points to OV 1, the trial court held as follows:

> I do know that there was—[an] allegation that the weapon was thereby placed by the victim's head.
>
> *  *  *
>
> Well, I do believe there's sufficient factual basis for the scoring of OV 1 at 15, despite the fact that the home invasion charge was dismissed because of the statute of limitations.

-5-

So[,] we will score OV 1 at 15.

We conclude that OV 1 was properly assessed at 15 points. The judicial sentencing guidelines state that OV 1 should be assessed at 15 points if there was "[a] firearm pointed toward victim *or* touching with another weapon[.]" Michigan Sentencing Guidelines (2d), p 44 (emphasis added). Because the word "or" is a disjunctive term that indicates a choice between two things, see *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 209; 895 NW2d 490 (2017), OV 1 can be assessed 15 points if there was "touching with another weapon," Michigan Sentencing Guidelines (2d), p 44. While we are constrained under *Beck* to presume that Jackson did not possess a firearm during the CSC-I, we are not constrained to presume that Jackson did not possess a weapon. "Weapon" is defined as "something . . . used to injure, *defeat*, or destroy." *Merriam-Webster's Collegiate Dictionary* (11th ed) (emphasis added).

The victim testified that she saw a silver gun and that she felt her attacker hold the gun to her head. Although the jury appears to have disregarded the victim's testimony that she was able to see the gun despite the fact that it was dark in the room, the jury could have concluded that Jackson nonetheless was in possession of a weapon during his crimes. Indeed, the victim's testimony supports that Jackson possessed some sort of weapon. Aside from attempting to keep her legs pressed together before the penetration occurred, the victim did not resist the assault. After the assault was complete, the victim instructed her sister not to chase after her attacker because she believed that he had a gun. As already stated, the jury could have convicted Jackson of CSC-I if it concluded that Jackson "was armed with . . . a weapon." Because we are not constrained under *Beck* to presume that Jackson did not possess weapon and because the record supports the factual predicate for the trial court's scoring decision with respect to OV 1, we conclude that OV 1 was properly assessed 15 points.

### 2. OV 2

OV 2 concerns physical attack or injury of the victim. Michigan Sentencing Guidelines (2d), p 44. Specifically, 25 points are to be assessed if the victim suffered "[b]odily injury and/or [was] subjected to terrorism." *Id*. Zero points are to be assessed if the victim suffered "[n]o injury[.]" *Id*. "Terrorism is conduct that is designed to increase substantially the fear and anxiety that the victim suffers during the offense." *Id*.

With respect to the merits of Jackson's argument, the trial court found that OV 2 was properly assessed at 25 points, stating:

> I have reviewed the file and reviewed the appellate decisions in this [case] and I do believe there's sufficient factual basis for the scoring of OV 2 at 25 points based upon subjection of the victim to fear and anxiety during the offense that occurred.
>
> So[,] we will score OV 2 at 25 points.

Jackson argues that, "[t]o the extent that the [trial] court's conclusion that the victim was subjected to 'terrorism' involved a finding that the assault occurred at gunpoint, the score was based on acquitted conduct and violated . . . Jackson's due process rights." However, there is no indication that the trial court relied on Jackson's use of a firearm. Rather, the trial court referenced

the fact that Jackson subjected the victim "to fear and anxiety during the offense that occurred." This is supported by record evidence, which establishes that Jackson, who was a stranger to the victim, entered the victim's home in the early morning hours and got into bed with the victim and her two young children. The victim awoke to "[h]eavy" "weight" "[o]n top of [her]." From there, Jackson covered the victim's eyes and penetrated her. The victim's testimony supports that, during the assault, Jackson possessed a weapon that she perceived to be a firearm. When the victim began to pray during the penetration, Jackson stated, "shut up, bitch." Testimony supports that the victim was crying and whimpering during the assault.

Thus, the record supports that Jackson's conduct was designed to substantially increase the fear and anxiety of the victim so that Jackson could accomplish his objective of forcing an act of criminal sexual conduct upon her. See *People v Dilling*, 222 Mich App 44, 55; 564 NW2d 56 (1997). Because the record supports the factual predicate for the trial court's scoring decision with respect to OV 2, we conclude that OV 2 was properly assessed at 25 points.[2]

Affirmed.

/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron

---

[2] Based on this holding, we need not consider the prosecutor's argument that the law-of-the-case doctrine applies.