*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* REYNA/ROJAS/SALINAS, Minors.

UNPUBLISHED
June 1, 2023

No. 362764
Wayne Circuit Court
Family Division
LC No. 2022-000032-NA

Before: RICK, P.J., and SHAPIRO and O'BRIEN, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to eight minor children under MCL 712A.19b(3)(b)(*ii*) (child or sibling suffered injury or abuse and parent with opportunity to prevent injury or abuse failed to do so), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if child is returned to parent). For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

On January 10, 2022, the Department of Health and Human Services filed a petition asking the trial court to take jurisdiction over the children and terminate respondent's parental rights. The events leading to the petition began with the birth of respondent's eighth child, SR. SR was born positive for methamphetamine and marijuana. Respondent and SR's putative father, Jason Santos,[1] both appeared to be under the influence of substances when SR was born, and they argued in the hospital. When respondent was discharged and returned to Santos's home, there were indications that IS, one of respondent's children who had been left in Santos's care, had been severely physically abused by Santos. The paternal grandfather took IS to the hospital after seeing images of IS on Facebook. It was determined that IS had more than 100 bruises and abrasions, and the director of the child protection team at the hospital opined that IS's injuries were caused by nonaccidental trauma. IS had previously fallen out of a second-story window and suffered a

---

[1] Petitioner also sought termination with respect to SR's unknown biological father. Santos was identified as SR's putative father, but he did not establish paternity. SR's "unknown . . . father['s]" parental rights were terminated in the same order appealed by respondent.

traumatic brain injury as a result of respondent's improper supervision. In light of IS's condition, most of his siblings were also examined and observed to have multiple bruises and injuries. One of the children, GS, had healing fractures.

Angelenette Perham testified on behalf of petitioner at the preliminary hearing. Perham testified regarding SR having tested positive for various drugs at the time of her birth, the injuries Santos inflicted upon IS during respondent's hospitalization, and the injuries revealed during the later examinations of the other children. Perham also recounted statements from the children suggesting that Santos's abuse had been ongoing. According to Perham, the oldest child, AR, reported that Santos hit the children whenever they were in his home, they were all afraid to be there and that they had told respondent about their fears. Perham spoke to respondent, who did not admit witnessing any abuse but acknowledged that there had been some "red flags." Perham also testified about the prior substantiated Children's Protective Services (CPS) cases against respondent and the services provided to her.[2]

The family court referee found that it was contrary to the children's welfare to remain under respondent's care and that petitioner made "more than reasonable efforts to prevent removal." She therefore authorized the petition and the children's removal and ordered that no efforts toward reunification be made. The referee also ordered that respondent's visitation be suspended. The trial court entered an order consistent with these recommendations.

A trial to adjudicate parental fitness was scheduled. Rather than proceed with the trial, respondent's counsel informed the referee that respondent intended to enter a no-contest plea as to jurisdiction of the court over the children. Respondent was sworn in, questioned regarding her plea, and advised of the rights she waived by entering a plea consistent with the court rule. After this colloquy, the referee was informed that respondent also intended to enter a "no contest" plea to the alleged statutory grounds for termination of her parental rights. The referee then sought clarification, asking counsel if respondent was "stipulating to statutory ground[s]" and counsel confirmed the referee's understanding. A stipulation was then read into the record providing both the factual basis for respondent's plea to jurisdiction and the content of the parties' factual stipulation concerning statutory grounds for termination.[3] Respondent's attorney confirmed that

---

[2] Petitioner's efforts to prevent removal included referring respondent to substance abuse therapy in 2016, referring her to substance abuse therapy and Families First services in 2018, reviewing respondent's history with CPS, making safety plans for the children, sending notifications to law enforcement, meeting with hospital staff, and holding a decision-making meeting. Those services were provided in connection with two of the children being born drug positive and IS falling out of the window. Respondent completed services in connection with a case that was substantiated for improper supervision and physical neglect on August 11, 2021, but the instant case was opened only two weeks later.

[3] The stipulation of facts included the aforementioned events surrounding SR's birth and the following allegations relating to abuse: (1) IS was severely abused by Santos, having suffered more than 100 bruises while in Santos's care; (2) respondent failed to protect her children from repeated abuse inflicted by Santos, even after the children expressed their fear of Santos to respondent; (3)

the referee had complied with the court rules and that her client stipulated to the recited facts. Based upon those stipulated facts, the referee found by "clear and convincing evidence that there are statutory grounds to exercise jurisdiction over these children."[4]

At the later held best interests hearing, the parties agreed to admit medical records regarding SR's birth and the examinations of each of the children, a PowerPoint presentation regarding the children's injuries, and a report from the Clinic for Child Study (CCS). Perham against testified about the conditions leading to removal, respondent's prior substantiated CPS cases and services, and how the children were doing in their current placements. The referee also heard testimony from respondent, who testified that she had separated from Santos and wanted to work toward reunification with her children.

The referee began by observing that there was nothing positive about respondent in the CCS report and that respondent did not fully participate in or benefit from services provided in the past, as evidenced by the fact that SR was born with substances in her system. The referee opined that IS's traumatic brain injury should have been a "wake-up call" for respondent, but she did not take that opportunity to become "a model parent." Instead, respondent exposed the children to an abusive man. The referee did not believe that the abuse could have been unknown to respondent when IS had over 100 bruises on his body, and GS had suffered fractures. The referee opined that respondent had used substances to blind herself to the children's injuries. For these reasons and others, the referee found that termination of respondent's parental rights was in the children's best interests, regardless of their placement with relatives. The referee prepared an order terminating respondent's parental rights, and the trial court signed the order.

## II. ANALYSIS

### A. STIPULATION TO STATUTORY GROUNDS

Respondent first argues that the trial court erred by failing to advise respondent of her rights she would waive via a "plea" to statutory grounds for termination and the consequences of such a plea. We disagree.[5]

---

"all the children suffered from some form of abuse," which the children indicated had been happening for almost a year; (4) "all the children" had visible bruises; (5) GS also presented with several healing fractures; and (6) respondent acknowledged "that there were red flags of physical abuse."

[4] A finding of grounds for jurisdiction need be supported only by the preponderance of the evidence while a finding of statutory grounds for termination must be be supported by clear and convincing evidence. Compare MCR 3.972(C)(1) and MCR 3.977(E)(3).

[5] Unpreserved claims of error in child-protective proceedings are reviewed under the plain-error rule. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). The rule requires the respondent to establish "that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected [the respondent's] substantial rights." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019).

"Child protective proceedings are governed by the juvenile code, MCL 712A.1 *et seq*., and Subchapter 3.900 of the Michigan Court Rules." *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). Such proceedings are divided into two phases: the adjudicative phase and the dispositional phase. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). The adjudicative phase involves a determination of whether the court can take jurisdiction over the child and the respondent. *Ferranti*, 504 Mich at 15. "The court can exercise jurisdiction if a respondent-parent enters a plea of admission or no contest to allegations in the petition, see MCR 3.971, or if the Department proves the allegations at a trial, see MCR 3.972." *Id*. Regardless of the method employed in any given case, "[t]he adjudication divests the parent of her constitutional right to parent her child and gives the state that authority instead." *Id*. at 16. After the adjudication, the case proceeds to the dispositional phase, during which the court determines what steps are required to "ensure the child's safety and well-being." *Sanders*, 495 Mich at 404. It is during this phase that a respondent's parental rights might be permanently terminated, either at the initial dispositional hearing or after a period of review and the filing of a supplemental petition seeking termination of parental rights. *Id*. at 406-407.

Because parents have "a fundamental right to direct the care, custody, and control" of their children, Michigan law recognizes that a plea waiving that fundamental right must be voluntary and knowing to satisfy the constitutional guarantee of due process. *Ferranti*, 504 Mich at 21. This understanding is reflected in the court rule governing pleas in child-protective proceedings, MCR 3.971. *Id*. In pertinent part, subrule (D)(1) requires the court to "satisfy[] itself that the plea is knowingly, understandingly, and voluntarily made." MCR 3.971(D)(1). To that end, subrule (B) identifies what the court must advise the respondent before accepting a plea.

Although MCR 3.971 does not expressly limit its application to adjudicative pleas, the advice required by subrule (B) shows that this was the intention of the rule.[6] Indeed, respondent does not dispute that the rule, as written, applies only to adjudicative pleas. Respondent also does not dispute that the trial court substantially followed the procedure outlined in MCR 3.971 as it

---

[6] For instance, the court must advise the respondent that if the plea is accepted, the respondent will give up the right to "trial by a judge or trial by a jury[.]" MCR 3.971(B)(3)(a). But the right to a jury exists only at the "trial," MCR 3.911(A), which is defined as "the fact-finding adjudication of an authorized petition to determine if the minor comes within the jurisdiction of the court," or "a specific adjudication of a parent's unfitness to determine whether the parent is subject to the dispositional authority of the court," MCR 3.903(A)(27). During a termination hearing in the dispositional phase, "[t]here is no right to a jury determination." MCR 3.977(A)(3). Before accepting a plea, MCR 3.971 also requires the trial court to advise the respondent of his or her right to "have the petitioner prove the allegations in the petition by a preponderance of the evidence[.]" MCR 3.971(B)(3)(b). While this portion of the rule accurately reflects the petitioner's burden of proof with respect to adjudication, MCR 3.972(C)(1), its burden of proof regarding statutory grounds for termination during the dispositional phase is elevated to clear and convincing evidence, MCR 3.977(E)(3), (F)(1)(b), and (H)(3)(a); MCL 712A.19b(3).

related to the adjudicative plea.[7]  However, respondent argues that a "plea" regarding statutory grounds for termination of parental rights is no less important and should be afforded analogous procedural safeguards to comport with the minimum requirements of due process.  Respondent asks us to hold that a modified version of MCR 3.971(B) must be given to parents who enter pleas to statutory grounds for termination.

This argument assumes, however, that a respondent may enter a "plea" to statutory grounds for termination in the first instance.  Stated differently, respondent focuses on the adequacy of the safeguards with respect to pleas regarding statutory grounds for termination, but overlooks that this procedure is not even contemplated by courts rules or the juvenile code.  What respondent characterizes as a *plea* to statutory grounds for termination is in fact a *stipulation* as to the facts relevant to a determination of statutory grounds.  As noted, when informed that respondent intended to enter a plea to statutory grounds, the referee in this case confirmed with respondent's counsel that respondent intended to stipulate that statutory grounds were proven.   Thereafter, the relevant portion of the petition was read into the record and respondent's counsel affirmatively stated that respondent stipulated to those factual allegations.  The fact that respondent's counsel used the term "plea" at various points in the hearing does not transform this factual stipulation into a formal plea.  See e.g., *City of Highland Park v State Land Bank Auth*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355949); slip op at 7 ("Courts are not bound by a party's choice of labels because this would effectively elevate form over substance.") (quotation marks and citation omitted).  Further, it makes sense that the court rules contemplate a plea only at the adjudication stage when one considers that "the adjudication trial is the only fact-finding phase regarding parental fitness . . . ."  *In re Kanjia*, 308 Mich App 660, 672; 866 NW2d 862 (2014).  Once the proceedings move to the dispositional phase, a respondent is no longer faced with a trial on their parental fitness; instead, the focus is on the child.  See *Sanders*, 495 Mich at 404.

The requirements for accepting a plea at the adjudicative phase of a child-protective proceeding affords the respondent due-process protection relating to their parental rights.[8]

---

[7] Respondent argues that the trial court failed to her advise of her appellate rights related to the adjudication as required by MCR 3.971(B)(6).  However, respondent is not challenging the adjudication.  See also MCR 3.971(C) ("The respondent may challenge the assumption of jurisdiction in an appeal from the order terminating respondent's parental rights if the court fails to properly advise the respondent of their right to appeal pursuant to subrule (B)(6)-(8).").

[8] "[D]ue process requires that every parent receive an adjudication hearing before the state can interfere with his or her parental rights." *Sanders*, 495 Mich at 415.  "The adjudication divests the parent of her constitutional right to parent her child and gives the state that authority instead." *Ferranti*, 504 Mich at 16.  "While the adjudicative phase is only the first step in child protective proceedings, it is of critical importance because the procedures used in adjudicative hearings protect the parents from the risk of erroneous deprivation of their parental rights." *Sanders*, 495 Mich at 405-406.   "[F]ollowing adjudication, which affords a parent due process for the protection of his or her liberty interests, the parent is no longer presumed fit to make decisions for the child and that power . . . rests instead with the court." *In re Deng*, 314 Mich App 615, 627; 897 NW2d 445 (2016).

Nonetheless, respondent argues that although the adjudication gives the court authority to assume control of the child's care and custody, it does not permanently end the parent's fundamental right to parent his or her child and so there must be due-process protections beyond the adjudication. But this does not change the fact that neither court rule nor statute contemplate a respondent entering a plea at the statutory-grounds stage. Moreover, parental rights may not be terminated merely upon a finding that statutory grounds exist. Once the trial court finds that the petitioner established at least one statutory ground for termination by clear and convincing evidence, the trial court must conduct a best-interest evidentiary hearing and determine whether termination of parental rights is in the child's best interests. See MCL 712A.19b(5) (directing the court to terminate parental rights upon finding a statutory ground for termination and that termination is the child's best interests).[9]

In sum, there is no basis in the court rules, juvenile code, or present Michigan caselaw to apply MCR 3.971 when a respondent stipulates to the factual basis for a finding that statutory grounds exist to support termination of their parental rights. Accordingly, respondent has not identified a plain error affecting her substantial rights.

## B. AGGRAVATED CIRCUMSTANCES

Respondent next argues that the trial court failed to make a proper judicial determination that aggravated circumstances exist such that reasonable efforts toward family reunification were not required. We disagree.[10]

"Reasonable efforts to reunify the child and family must be made in all cases except those involving the circumstances delineated in MCL 712A.19a(2)." *In re Simonetta*, 507 Mich 943, 943 (2021).[11] "Under MCL 712A.19a(2)(a), there must be a 'judicial determination that the parent has subjected the child to aggravated circumstances' before the Department is excused from making reasonable efforts." *In re Smith-Taylor*, 509 Mich 935, 935 (2022). Aggravated circumstances include, but are not limited to, "[b]attering, torture, or other severe physical abuse" of a child or sibling. MCL 722.638(1)(a)(*iii*). Accord *Smith-Taylor*, 509 Mich at 935. Additionally, "[a]ggravated circumstances are present both for a parent who is a 'suspected perpetrator' of such abuse and a parent who is 'suspected of placing the child at an unreasonable

---

[9] This case does not concern, and we need not address, the necessary procedures and safeguards for when a parent voluntary relinquishes their parental rights.

[10] Unpreserved claims of error in child-protective proceedings are reviewed under the plain-error rule. *Pederson*, 331 Mich App at 463.

[11] An order entered by the Michigan Supreme Court disposing of an application constitutes binding precedent if it "contains a concise statement of the applicable facts and reasons for the decision." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012). This is so even if a proper understanding of the order requires reference to other opinions. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; 923 NW2d 607 (2018).

-6-

risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk[.]' " *Smith-Taylor*, 509 Mich at 935, quoting MCL 722.638(2).

In arguing that the trial court failed to make a judicial determination that aggravated circumstances existed, respondent relies on *Simonetta*, 507 Mich 943. In that case, the trial court found that the respondent abused marijuana and opiates substances during her pregnancy resulting in the newborn undergoing withdrawal. Respondent appealed asserting that the trial court had failed to make a judicial determination of aggravated circumstances. This Court rejected the argument, reasoning that the trial court's findings as to respondent's use of drugs while pregnant with the child constituted a "determinat[ion] that [the child] had suffered severe physical abuse . . . result[ing] in a life-threatening injury. *In re Simonetta*, unpublished per curiam opinion of the Court of Appeals, issued February 18, 2021 (Docket No. 354081), pp 4-5, vacated in part by 507 Mich 943.[12]

The Supreme Court, however, vacated this Court's opinion with respect to this issue and reversed the trial court's order terminating the respondent's parental rights. *Simonetta*, 507 Mich at 943. The Court held that reasonable efforts toward reunification "must be made in all cases except those involving the circumstances delineated in MCL 712A.19a(2)." *Id*. It therefore remanded to the trial court with directions to "either order that the petitioner provide reasonable services to the respondent, or articulate a factual finding based on clear and convincing evidence that aggravated circumstances exist such that services are not required." *Id*.

On the basis of that case, respondent argues that the judicial determination required by MCL 712A.19a(2)(a) regarding aggravated circumstances must be explicitly made rather than inferred from the trial court's findings. In this case, the referee presiding over the hearing did not expressly address why reasonable efforts were not required, but in the context of suspending visitation she opined that the evidence reflected abuse that rose to the level of torture:

> I am so appalled at what constitutes, based upon the testimony presented today, the most horrific type of abuse, not just physical abuse and traumatic abuse, quite frankly, torture. But that [respondent] was so absorbed in herself that she wouldn't understand and pick up the cues from her kids [and] for her to say in retrospect, "I had red flags[,]" . . . is just really simply appalling. It's appalling, and I am suspending any contact between [respondent] and these children.

The trial court subsequently adopted the referee's findings and recommendations in their entirety.

We acknowledge that the quoted statement was offered in connection with suspending respondent's visitation, but the referee's explicitly stated belief that the abuse involved in this case rose to the level of torture clearly met the aggravated circumstances identified in MCL 722.638(1)(a)(*iii*). Further, it is settled that "[a] court speaks through its written orders and

---

[12] This Court later held that "[m]aternal drug use during pregnancy does not give rise to an aggravated circumstance permitting the termination of parental rights under any circumstances because a fetus is not a 'child' under the Probate Code, MCL 710.21 *et seq*." *In re Simonetta*, 340 Mich App 700, 703; ___ NW2d ___ (2022).

judgments, not through its oral pronouncements." *In re Baham*, 331 Mich App 737, 747 n 6; 954 NW2d 529 (2020) (quotation marks and citation omitted). The order after the preliminary hearing states that respondent subjected the children to aggravated circumstances, including failure to protect, torture, and severe physical abuse. Accordingly, the court explicitly found aggravated circumstances existed in this case.

MCL 712A.19a(2)(a) relieves petitioner from its duty of reasonable efforts to reunify the child and family when "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances . . . ." The statute does not identify when or how such a determination must be articulated—it only requires that the determination be made. Because the record reflects a judicial determination of aggravated circumstances, we conclude that respondent has not established plain error affecting her substantial rights.

## C. PARENTING TIME

Respondent next argues that the trial court erred by suspending her parenting time without making an explicit finding regarding a risk of harm to the children.[13]

Respondent relies on MCL 712A.18f(3)(e) and MCR 3.965(C)(7)(a) in support of her contention that a finding of harm is required before a trial court may suspend parenting time. But MCL 712A.18f(3) addresses what topics that must be addressed in a case service plan. *In re Ott*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 362073); slip op at 9. The statute is not relevant in this case because petitioner sought termination of respondent's parental rights at the initial disposition and, thus, did not prepare a case service plan. Respondent's reliance on MCR 3.965(C)(7)(a) is also inapposite. Respondent focuses on the portion of the rule stating that "the court must permit each parent frequent parenting time with a child in placement unless parenting time, even if supervised, may be harmful to the child." This rule governs the period between the preliminary hearing and adjudication, *Ott*, ___ Mich App at___; slip op at 8, and therefore applied at the time of the trial court's decision regarding parenting time. However, the rule begins with the phrase, "Unless the court suspends parenting time pursuant to MCL 712A.19b(4)," and that statute provides that "[i] a petition to terminate parental right to a child is filed, the court may suspend parenting time for a parent who is the subject of the petition." Given that the trial court suspended respondent's parenting time on the basis of MCL 712A.19b(4), the requirement that parenting time be provided absent a showing of harm did not apply in this case.

Thus, because the trial court suspended respondent's parenting time at the preliminary hearing when it authorized the petition seeking termination at the initial disposition, it was not required to find that parenting time posed a risk of harm to the children.

## D. BEST INTERESTS

---

[13] Unpreserved claims of error in child-protective proceedings are reviewed under the plain-error rule. *Pederson*, 331 Mich App at 463.

-8-

Lastly, respondent argues that the trial court erred by finding that termination of her parental rights was in the children's best interests.[14]

After a statutory basis for termination has been established, the court must consider whether termination is in the child's best interests. *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018). "Best interests are determined on the basis of the preponderance of the evidence." *Id*. (quotation marks and citation omitted). At the best-interest stage, the trial court's focus must be on the child, rather than the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). The trial court should consider all the evidence before it in assessing a child's best interests. *Keillor*, 325 Mich App at 93-94. The trial court is permitted to consider a wide range of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). The child's "well-being while in care, and the possibility of adoption," are also relevant considerations. *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). A trial court must consider a child's placement with a relative caregiver, which weighs against termination. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015).

Respondent argues that the trial court's best-interest finding was not supported by sufficient evidence because there was minimal evidence regarding the children's interactions with respondent. According to respondent, the little record evidence on that point suggested that respondent had a strong relationship with the children. Respondent's focus on the minimal record regarding this issue is unpersuasive because the parent-child bond is but one factor relevant to the best-interest determination. Moreover, it is beyond dispute that a parent-child bond may be outweighed by other considerations—our caselaw is replete with opinions affirming termination of parental rights despite evidence of a bond. See, e.g., *In re Rippy*, 330 Mich App 350, 361-362; 948 NW2d 131 (2019); *In re Jones*, 316 Mich App 110, 120-121; 894 NW2d 54 (2016); *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 638; 853 NW2d 459 (2014).

Petitioner chose to focus its efforts at the termination hearing on proofs regarding the underlying circumstances, respondent's CPS history, services offered to her in the past, and the children's general well-being with their respective caregivers. The trial court found that the children's best interests would be furthered by termination of respondent's parental rights because respondent never benefited from past services and failed to look out for the children when her partner was hurting them, and also noted that the children were all safe and happy having been removed from respondent's care. Under these circumstances, we are unpersuaded that the trial court clearly erred by finding termination was in the children's best interests without significant evidence regarding the children's bond with respondent.

---

[14] The trial court's finding regarding a child's best interests is reviewed for clear error. *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Kaczkowski*, 325 Mich App 69, 74; 924 NW2d 1 (2018) (quotation marks and citation omitted).

Respondent further argues that MCR 3.973(E)(2) required the trial court to consider evidence "concerning the child from the child's parent, guardian, legal custodian, foster parent, child caring institution, or relative with whom the child is placed," and there was no such evidence before the trial court. However, this court rule does not require that such evidence be brought before the court—it only states that the court "shall consider . . . any written or oral information" regarding the child from the enumerated sources. MCR 3.973(E)(2). In the absence of any indication that such information regarding the children was available and brought to the court's attention, the trial court cannot be faulted for failing to consider it.

Respondent also takes issue with the trial court's failure to consider the children's best interests individually. But it is only when "the best interests of the individual children significantly differ" that the trial court must address the children's best interests separately. *White*, 303 Mich App at 715. Respondent suggests that reversal is necessary because the children were not all in the same relative placement and, therefore, should have been considered individually pursuant to *Olive/Metts*, 297 Mich App at 43-44. In that case, however, we found that the children's different placements were highly significant because the trial court in that case failed to address the fact that the two youngest children were placed with relatives. *Id*. at 43. Relative placement must be explicitly addressed to adequately develop the record for appellate review, so the trial court's collective best-interest analysis was clearly erroneous in that it failed to consider the younger children's relative placement. *Id*. at 43-44. Here, the opposite problem occurred—the referee engaged in a collective best-interest analysis and determined that termination was appropriate "even though these children are placed with relatives," when some of the children were not placed with a "relative" as that term is defined by MCL 712A.13a(1)(j), as amended by 2016 PA 191. Regardless, the referee's overinclusive consideration of this factor weighed *against* termination of parental rights and actually benefited respondent in this case, so any error regarding this matter was harmless. We do not fault the referee for failing to address the children individually because her primary reasoning—the risk of harm the children faced while in respondent's negligent care in contrast to their postremoval safety—was equally applicable to all the children.

Lastly, respondent argues that the best-interest determination adopted by the trial court was constitutionally improper because there was a less restrictive means of providing the children with permanency and stability that would not have infringed on respondent's liberty interest in parenting her children, namely, allowing the children to remain in their respective placements pursuant to legal guardianships or custody orders. Respondent's argument is not supported by Michigan caselaw. As noted, at the best-interest stage, the trial court's focus must be on the child. *In re Schadler*, 315 Mich App at 411. A guardianship may be an appropriate choice when "an ongoing relationship with [the parent]—rather than termination—is in the [child's] best interests." *In re Mason*, 486 Mich 142, 168-169; 782 NW2d 747 (2010). Here, the referee acknowledged that one of the children was in a guardianship, but noted that the guardianship could be terminated at any point, and the young children deserved permanency. The referee declared that it would not allow the children to return to respondent only to come before the court in a few years with worse

injuries, as it was clear that respondent had not learned anything in her multiple interactions with CPS. We conclude that the trial court did not clearly err by determining that the children's best interests would be served by termination of respondent's parental rights rather than guardianships or custody orders.

Affirmed.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Colleen A. O'Brien