Ronayne Krause, P.J.
*609 *111 Defendant appeals as on leave granted, pursuant to an order of remand from our Supreme Court, the trial court's denial of summary disposition in defendant's favor and grant of summary disposition in plaintiff's favor. For purposes of the instant appeal, the facts are undisputed. Plaintiff's employer provided her with a vehicle, which was insured by defendant. Plaintiff went to a self-serve spray car wash in early February, parked but left the vehicle running, began washing the vehicle, and as she worked her way around to the rear of the vehicle, she *112 slipped and fell, suffering serious injuries for which she sought benefits under the no-fault act, MCL 500.3010 et seq . It is unknown why plaintiff slipped, or what she slipped on, but she believes it may have been ice. It is undisputed that plaintiff was not entering, occupying, exiting, or touching the vehicle at the time of her fall, although she was using the car wash's sprayer wand. The trial court's denial and grant of summary disposition was based in significant part on the fact that precedent from our Supreme Court, which was confusing, had not clearly overruled precedent from this Court, which was therefore still good law. We agree and affirm.
As an initial matter, the remand order from our Supreme Court reads, in its entirety, as follows:
By order of September 27, 2016, the application for leave to appeal the March 3, 2015 order of the Court of Appeals was held in abeyance pending the decision in Spectrum Health Hospitals v. Westfield Ins. Co. (Docket No. 151419). On order of the Court, the case having been decided on June 30, 2017, 500 Mich. [1024, 897 N.W.2d 166] (2017), the application is again considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we REMAND this case to the Court of Appeals for consideration as on leave granted. Among the issues to be considered, the Court of Appeals shall address whether the causal connection between the plaintiff's injuries and the maintenance of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." Thornton v. Allstate Ins. Co. , 425 Mich. 643, 659 [391 N.W.2d 320] (1986). [ Woodring v. Phoenix Ins. Co. , order of the Michigan Supreme Court, entered October 5, 2017 (Docket No. 151414).]
The decision in Spectrum consisted entirely of an order remanding that case to this Court for reconsideration in light of Covenant Med. Ctr. Inc. v. State Farm Mut. Auto. Ins. Co. , 500 Mich. 191, 895 N.W.2d 490 (2017). That case addresses whether a healthcare provider has a *113 statutory cause of action against an insurer for the payment of PIP benefits; it does not appear to address any issues relevant to the instant appeal.
Plaintiff argues that the issue specified for consideration by our Supreme Court was not argued in the trial court and, therefore, is allegedly unpreserved. It is true that defendant only mentioned the requirement in its brief and provided no supporting argument whatsoever. However, at the motion hearing, defendant did not present an argument to the effect that plaintiff's act of washing her vehicle did not constitute a sufficient causal nexus, but rather that the car wash was "just merely a fortuitous location where the accident happened." Defendant clearly makes a significantly more thorough argument on appeal, but that does not preclude appellate consideration when the issue itself is not wholly novel. See Steward v. Panek , 251 Mich. App. 546, 554, 652 N.W.2d 232 (2002). In any event, because we may not disregard explicit and comprehensible instructions given to us by our Supreme *610 Court, plaintiff's argument is misplaced. We will address this issue second.
A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine whether the moving party is entitled to judgment as a matter of law. Maiden v. Rozwood , 461 Mich. 109, 118, 597 N.W.2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the nonmoving party and grants summary disposition only if the evidence fails to establish a genuine issue regarding any material fact. Id . at 120, 597 N.W.2d 817. The interpretation and application of statutes, rules, and legal *114 doctrines is reviewed de novo. Estes v. Titus , 481 Mich. 573, 578-579, 751 N.W.2d 493 (2008).
Much of the instant appeal turns on whether this Court's opinion in Musall v. Golcheff , 174 Mich. App. 700, 436 N.W.2d 451 (1989), which held that injuries caused by a car wash wand were compensable under the no-fault act, is precedentially binding. Defendant argues that it is not binding pursuant to MCR 7.215(J)(1), the "first-out rule," while citing an unpublished opinion that is clearly not binding under MCR 7.215(C)(1). Unpublished cases are significantly less persuasive; this Court may not be strictly bound to follow older published cases, but traditionally regards them as retaining some authority, at least if they were not disputed by some other contemporaneous case. Indeed, MCR 7.215(J)(1) does not state, as does MCR 7.215(C)(1), that older cases are not precedentially binding, only that later ones must be followed. In contrast, MCR 7.215(C)(1) explicitly states that unpublished opinions "should not be cited for propositions of law for which there is published authority," whereas no similar restriction applies under MCR 7.215(J)(1). Defendant's argument is therefore, disingenuous.
Our Supreme Court "recognizes the maxim expressio unius est exclusio alterius ; that the express mention in a statute of one thing implies the exclusion of other similar things." Bradley v. Saranac Community Sch. Bd. of Ed. , 455 Mich. 285, 298, 565 N.W.2d 650 (1997). Interpretation of a court rule follows the general rules of statutory construction. Grievance Administrator v. Underwood , 462 Mich. 188, 193-194, 612 N.W.2d 116 (2000). We think it reasonable to draw the negative inference that we are not strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990, but we think they are nevertheless *115 considered to be precedent and entitled to significantly greater deference than are unpublished cases. Consequently, we are not impressed by the suggestion that Musall has no precedential effect simply because it is an older case.
That being said, this Court may not follow any opinion previously decided by this Court, no matter when, to the extent that opinion conflicts with binding precedent from our Supreme Court, which may be essentially anything it issues that conforms to Const. 1963, art. 6, § 6. DeFrain v. State Farm Mut. Auto. Ins. Co. , 491 Mich. 359, 369-370, 817 N.W.2d 504 (2012). This includes peremptory orders to the extent they can theoretically be understood, even if doing so requires one to seek out other opinions, id . ; see also People v. Crall , 444 Mich. 463, 464 n. 8, 510 N.W.2d 182 (1993) ; Evans & Luptak , PLC v. Lizza , 251 Mich. App. 187, 196, 650 N.W.2d 364 (2002) -notwithstanding, with all due respect, the enormous confusion peremptory orders sow and the frustration they generate. Defendant thus relies on the argument that *611 LeFevers v. State Farm Mut. Auto. Ins. Co. , 493 Mich. 960, 828 N.W.2d 678 (2013), and Frazier v. Allstate Ins. Co. , 490 Mich. 381, 808 N.W.2d 450 (2011), are controlling because they partially "disavowed" Miller v. Auto-Owners Ins. Co. , 411 Mich. 633, 309 N.W.2d 544 (1981), on which Musall relied. This convoluted chain thus depends on what exactly "disavowal" means and whether the peremptory orders are comprehensible.
Although no published cases have defined the difference, "disavowal" must mean something distinct from "overruling." See, e.g., Renny v. Dep't of Transp. , 478 Mich. 490, 505 n. 36, 734 N.W.2d 518 (2007). It appears clear from usage that disavowal is a pronouncement that a rule of law stated in a case no longer applies *116 without otherwise touching the result of the prior judgment. See Ray v. Swager , 501 Mich. 52, 72 n. 49, 903 N.W.2d 366 (2017) ; Kidder v. Ptacin , 284 Mich. App. 166, 170-171, 771 N.W.2d 806 (2009). Disavowal is, therefore, a repudiation that recognizes that a rule of law has been overruled as a consequence of some other decision, holding, or pronouncement, without itself constituting that overruling.
Because LeFevers can be comprehended, it is precedent binding on this Court and thus precludes this Court from relying on any prior decisions in conflict with it. LeFevers unambiguously held that Miller was disavowed to the extent it conflicts with Frazier , which did not itself mention Miller at all. However, LeFevers only stated that the exact portion of Miller that was "disavowed as dicta" was as follows:
'' [ MCL 500.3106(b) ] recognizes that some parked vehicles may still be operated as motor vehicles, creating a risk of injury from such use as a vehicle. Thus a parked delivery truck may cause injury in the course of raising or lowering its lift or the door of a parked car, when opened into traffic, may cause an accident. Accidents of this type involve the vehicle as a motor vehicle.'' [ LeFevers , 493 Mich. at 960, 828 N.W.2d 678, quoting Miller , 411 Mich. at 640, 309 N.W.2d 544.]
That is as far as the order went. We cannot comprehend any holding beyond that, and we think it would be inappropriate to infer anything additional from the order. The fact that Miller was only partially "disavowed" necessarily means that the trial court properly found Miller to also remain "good law" in part. Indeed, our Supreme Court has even recently cited Miller as remaining binding precedent at least in part. See Kemp v. Farm Bureau Gen. Ins. Co. of Mich. , 500 Mich. 245, n. 36, 901 N.W.2d 534 (2017).
*117 In Miller , our Supreme Court observed that it was incongruous for MCL 500.3105(1) to provide PIP benefits for, inter alia , maintenance of a motor vehicle as a motor vehicle, but for MCL 500.3106(1) to simultaneously provide that parked vehicles are generally excluded, because maintenance is usually not performed on vehicles while they are in motion and the exceptions seem irrelevant to maintenance. Miller , 411 Mich. at 637-638, 309 N.W.2d 544. This is completely logical. Consequently, the Miller Court turned to an analysis of the policies underlying the no-fault act and the various provisions of it. Id . at 638-641, 309 N.W.2d 544.
In so doing, the Court concluded that the parking exclusion reflected a policy decision that parked cars were generally not operating as motor vehicles except in three general circumstances in which "an accident is nonetheless directly related to its character as a motor vehicle." Id . at 640-641, 309 N.W.2d 544.
The Court explained: The policies underlying § 3105(1) and § 3106 thus are complementary rather than conflicting. Nothing of the policy behind the parking *612 exclusion-to exclude injuries not resulting from the involvement of a vehicle as a motor vehicle-conflicts with the policy of compensating injuries incurred in the course of maintaining (repairing) a motor vehicle. The terms of the parking exclusion should be construed to effectuate the policy they embody and to avoid conflict with another provision whose effect was intended to be complementary. [The plaintiff's] injury while replacing his shock absorbers clearly involved the maintenance of his vehicle as a motor vehicle. "Compensation is thus required by the no-fault act without regard to whether his vehicle might be considered ''parked'' at the time of injury. [ Id . at 641, 309 N.W.2d 544.]
Plaintiff accurately points out that the plaintiff in Frazier was not engaged in any kind of maintenance, but rather was simply closing the door of the vehicle *118 after having alighted from the vehicle. Frazier , 490 Mich. at 386-387, 808 N.W.2d 450. Likewise, it is apparent from this Court's opinion in LeFevers , to which we must refer in order to fully comprehend our Supreme Court's order, that the plaintiff in that case was also not engaging in maintenance, but rather attempting to open a trailer liftgate. LeFevers v. State Farm Mut. Auto. Ins. Co. , unpublished per curiam opinion of the Court of Appeals, issued December 13, 2011 (Docket No. 298216), p. 2, 2011 WL 6186825.
Nothing in either Frazier or LeFevers directly undermines the holding in Miller that the parked-vehicle exception in MCL 500.3106(1) is simply not triggered if an injury is caused by the maintenance of a vehicle as a motor vehicle, whether or not the vehicle is in fact parked. Plaintiff's claim is not that her Jeep was being operated as a motor vehicle, but rather maintained as a motor vehicle. The portion of Miller holding that the "parked vehicle" exception is not triggered was, therefore, not apparently affected.
Defendant argues that Frazier and LeFevers are not the only cases from our Supreme Court that have the effect of overruling the relevant holding of Miller . Defendant relies extensively on our Supreme Court's holding that scraping ice off a vehicle's windshield was unrelated to, inter alia , maintenance of a motor vehicle as a motor vehicle. Willer v. Titan Ins.Co. , 480 Mich. 1177, 747 N.W.2d 245 (2008). Notably, however, nothing in Willer stated that scraping ice was or was not maintenance; rather, it only addressed causation, which would be a function of MCL 500.3105. Even more notably, it was an appeal from an order of this Court denying an application for leave with no factual discussion. Our Supreme Court's peremptory orders are, after all, only binding to the extent they can be comprehended. Because there are no facts in either our Supreme Court's order or this *119 Court's order from which any hints may be gleaned, nothing in that order can be comprehended as contributing any value whatsoever to an understanding of what does, or does not, constitute "maintenance." It did not mention Miller except in a concurring statement, and therefore it appears to have no precedential relevance to Miller or any holding relevant in it.
Otherwise, far from overturning it, our Supreme Court has reiterated that Miller had determined "that because the injury arose out of 'maintenance' of the vehicle, it was unnecessary to consider whether the vehicle was parked," but rather cautioned "that the Miller holding is limited to the narrow circumstances of that case." Winter v. Auto. Club of Mich. , 433 Mich. 446, 457, 446 N.W.2d 132 (1989) ; see also Putkamer v. Transamerica Ins. Corp. of America , 454 Mich. 626, 632 n. 5, 563 N.W.2d 683 (1997). It is only otherwise *613 that "[w]here the motor vehicle is parked, the determination whether the injury is covered by the no-fault insurer generally is governed by the provisions of subsection 3106(1) alone." Putkamer , 454 Mich. at 632, 563 N.W.2d 683. Our Supreme Court further clarified that the no-fault act was fundamentally intended to restrict payment of PIP benefits under MCL 500.3105 to injuries related to the "transportational function" of a motor vehicle, but the vehicle did not necessarily need to be in motion. McKenzie v. Auto. Club Ins. Ass 'n , 458 Mich. 214, 220-226, 580 N.W.2d 424 (1998).
Obviously, Miller is no longer binding precedent in its entirety. However, its essential holding that "maintenance" of a parked vehicle will, at least under some circumstances, avoid triggering MCL 500.3106(1) does not appear to have been implicitly or explicitly overruled. If anything, it has been reaffirmed, subject only to whatever our Supreme Court meant by "the narrow *120 circumstances of that case." In the absence of any clarification of that statement, the most rational interpretation is to rely on the policy discussion in Miller itself, filtered through the policy discussion in McKenzie . The gravamen of Miller is that because most forms of vehicular maintenance literally cannot be performed unless a vehicle is parked, the word "maintenance" in MCL 500.3105(1) would be rendered nugatory by MCL 500.3106 unless that maintenance avoided triggering MCL 500.3106 altogether. McKenzie would suggest that any such maintenance must have some bearing on the "transportational function" of the vehicle.
Clearly, just as Michigan residents are completely expected to have some awareness of the practical implications of snow and ice, any Michigan resident would be aware that keeping their cars clean keeps them running longer and without danger. Given the condition of our roads and the salt used for snow and ice on our roads, cleaning a car is essential to be able to see while driving. Nothing in McKenzie , Winter , Putkamer , Willer , Frazier , or LeFevers is inconsistent with this Court's holding in Musall that washing a car does indeed constitute the kind of maintenance that will avoid the operation of MCL 500.3106(1). Consequently, those cases do not implicitly or explicitly overrule Musall . It is essential to see out the windows and windshield while driving to avoid risking injury or death to the driver or others.
We additionally note that the word "parked" is not defined in the no-fault act, and in fact only occurs in two sections out of the entirety of Chapter 500, those being MCL 500.3106 and MCL 500.3123. This necessarily raises the question of whether plaintiff's vehicle was even parked at all. While it may seem intuitively obvious, almost every intuitively obvious categorization *121 scheme inevitably breaks down into "I know it when I see it," which is precisely the opposite of a definition and thus an open invitation to capriciousness and unpredictability.
In particular, it should be clear that a vehicle is not necessarily parked just because it is stopped, halted, standing, or otherwise not presently in motion. Indeed, our Supreme Court has indicated that a lack of vehicular movement merely triggers a requirement to consider whether the vehicle is therefore parked. Winter , 433 Mich. at 455, 446 N.W.2d 132. In that case, a tow truck "positioned perpendicular to the street with the front wheels against the curb" with the hand brake set was deemed parked while it was being used to assist the plaintiff in lifting and leveling concrete slabs. Id . at 448-449, 456, 446 N.W.2d 132. In contrast, it would seem completely unreasonable to conclude that a vehicle that is unambiguously still within *614 the flow of traffic but temporarily motionless should be considered a parked vehicle under the no-fault act. Indeed, this Court has explicitly noted that a vehicle stopped at a traffic light does not constitute a "parked vehicle." Bachman v. Progressive Cas. Ins. Co. , 135 Mich. App. 641, 642-643, 354 N.W.2d 292 (1984).
This Court subsequently applied the definition of "parking" found in MCL 257.38 of the Michigan Vehicle Code, which defines it as " 'standing a vehicle, whether occupied or not, upon a highway, when not loading or unloading except when making necessary repairs.' " United Southern Assurance Co. v. Aetna Life & Cas. Ins. Co. , 189 Mich. App. 485, 489, 474 N.W.2d 131 (1991). This Court further noted that this definition was similar to the dictionary definition, and it opined that parking, standing, and stopping at the edge of a highway were synonymous. Id . This latter definition is, however, extremely troublesome because it obviously has no *122 application anywhere other than on an expressway; it would also seem to hold that a vehicle is by definition not parked "when making necessary repairs" even if it is not moving. It would also seem to indicate that a vehicle is parked while motionless at a traffic light. It is not workable to apply the definition in MCL 257.38 to vehicles anywhere other than on a highway, given that, by its express terms, it applies exclusively to vehicles ''upon a highway.'' See Kudek v. Detroit Auto. Inter-Insurance Exch. , 100 Mich. App. 635, 640-641, 300 N.W.2d 350 (1980), rev'd on other grounds 414 Mich. 956, 327 N.W.2d 69 (1982). It is likewise unworkable simply to treat any vehicle not presently in motion as parked.
The most coherent and succinct standard for determining what constitutes a parked vehicle is whether the vehicle was "in use as a motor vehicle" or more "like 'other stationary roadside objects that can be involved in vehicle accidents'." Heard v. State Farm Mut. Auto. Ins. Co. , 414 Mich. 139, 145, 324 N.W.2d 1 (1982). Ironically, in Heard , neither our Supreme Court nor this Court analyzed why the car, which was at a gasoline station where the plaintiff was pumping gasoline into it, was considered parked in that case; rather, both Courts appear to have presumed so and instead discussed whether it was "involved" in the accident. Insofar as we can determine, the plaintiff in Heard asserted that the vehicle had been parked, and the issue was never disputed. Similarly, in Musall , this Court treated the vehicle as parked but never analyzed the issue.
A somewhat less clear case is MacDonald v. Mich. Mut. Ins. Co. , 155 Mich. App. 650, 400 N.W.2d 305 (1986). Superficially, this Court apparently held that if the wheels were not moving, the vehicle was parked. Id . at 655-656, 400 N.W.2d 305. However, a more careful reading of the case *123 and its context reveals that a trailer was in the process of having its wheels and axle adjusted, and it was fundamental to that particular operation that the wheels be stationary while the trailer box was moved. Id . at 653, 400 N.W.2d 305. The plaintiff contended on appeal that the vehicle was not really parked because some slight shifting back and forth of the trailer box occurred; it was in that context that this Court focused on the movement of the wheels. Id . at 654-656, 400 N.W.2d 305. It therefore appears that the vehicle in question was in no state whatsoever to be operated and, consequently, was transportationally indistinguishable from any other piece of heavy equipment undergoing maintenance. This Court never addressed the maintenance exception to the parked-vehicle exclusion pursuant to Miller , however, because the plaintiff was denied benefits under MCL 500.3106(2), not MCL 500.3106(1). Id . at 654, 400 N.W.2d 305. *615 Notably, of the cases that have expressly analyzed what constitutes "parked," the tow truck in Winter was being used as a mobile tool, not a vehicle. In Davis v. Auto. Owners Ins. Co. , 116 Mich. App. 402, 406-408, 323 N.W.2d 418 (1982), another tow truck was deemed parked while it was in the process of winching a stranded car out of a ditch-again, clearly being used as a tool. The car at the traffic light in Bachman , however, was clearly still being used as a car, and in contrast, the trailer in MacDonald was immobilized. The only obvious definition that can be assembled from these examples is that the vehicle is both motionless and either being used as something unrelated to being a vehicle or incapable of being readily put back into motion. Plaintiff's vehicle was indeed motionless here, but it was also still running and clearly not intended to be left alone or to be unoccupied for very long. In the event the maintenance exception were to be deemed *124 inapplicable, we would hold that whether the vehicle was parked can only be resolved by posing the question to the trier of fact, because that is the only proper way to resolve a factual question where no bright-line rule can be easily established and where human intuition must be relied upon. Thus, even if summary disposition in plaintiff's favor were to be found improper, the trial court's refusal to grant summary disposition in defendant's favor must still be affirmed.
Thus, we now turn to our Supreme Court's order to consider "whether the causal connection between the plaintiff's injuries and the maintenance of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.' " Woodring , 501 Mich. at 883, 901 N.W.2d 887. As discussed, Willer is utterly barren of any worth to this analysis. It makes a specific reference to "on this record"; however, no record exists that may be readily found. It sets forth essentially no facts, and it is a reversal of an order of this Court denying leave to appeal, which also set forth no facts. Again, our Supreme Court's peremptory orders are only binding to the extent they are comprehensible, and Willer simply is not. All we know is that on the facts of that case, whatever they were , the plaintiff in Willer failed to persuade our Supreme Court that there was a more- than-but-for causal connection between her injuries and the scraping of her windshield.
Defendant additionally cites several cases in which the plaintiffs in those cases allegedly slipped and fell "in the general vicinity of a vehicle" and the plaintiff's injuries were deemed to lack the requisite causal connection. Such a conclusion is obvious and irrelevant. It would naturally follow that merely being near to a vehicle will not spontaneously generate a causal connection to that vehicle. In contrast, plaintiff was *125 actively engaged in performing essential maintenance to the vehicle pertinent to its use as a motor vehicle. It may have been routine maintenance and not necessarily of immediate urgency to permit it to move at all, but essential maintenance nonetheless. Because Musall remains controlling precedent and has already determined that such a causal nexus exists on highly similar facts, we would follow that conclusion even if we did not agree with it.
We respectfully disagree with our dissenting colleague's estimation of Williams v. Pioneer State Mut. Ins. Co. , 497 Mich. 875, 857 N.W.2d 1 (2014). As the Court held in that matter, the tree branch that injured the plaintiff as she was not causally linked to any act or omission of the plaintiff. Although the plaintiff had just removed several other branches from the hood of her car, that branch injured her was not one of the branches plaintiff removed from the car, it was not struck by or otherwise caused to fall by plaintiff or *616 one of the branches plaintiff removed from the car, it was not struck by the car, and in general plaintiff did not put into motion any chain of events that influenced the branch's falling. Williams v. Pioneer State Mut. Ins. Co ., unpublished per curiam opinion of the Court of Appeals, issued February 6, 2014 (Docket No. 311008), p. 2. In contrast, our dissenting colleague appears to dismiss the strong likelihood that the slippery patch on the floor in the present case was directly caused by the physical acts of maintenance performed by plaintiff, and even if it was not, those physical acts of maintenance directly impaired plaintiff's ability to detect or avoid it, or to prevent herself from actually falling or getting hurt even if avoidance of the slippery patch was impossible. It stands to reason that the tree branch that struck the plaintiff in Williams was outside any chain of causation involving the plaintiff or her car. *126 Plaintiff's maintenance of her car here did not simply happen to be performed in the wrong place at the wrong time, but in fact had a direct causal influence on her fall and resulting injury.
In summary, we conclude that the maintenance exception in Miller is still good law, that it applies to the facts in this case, that there would necessarily be a genuine question of material fact for the jury even if the maintenance exception did not apply here, and that there is a sufficient causal nexus between the plaintiff's injuries and the maintenance of a motor vehicle as a motor vehicle. We therefore affirm.
Markey, J., concurred with Ronayne Krause, P.J.