*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ASHLEY PATRICIA TREUTLE,

        Plaintiff-Appellant,

v

JOHN ANDREW TREUTLE,

        Defendant-Appellee.

UNPUBLISHED
September 12, 2024

No. 369854
Lapeer Circuit Court
Family Division
LC No. 22-055979-DM

Before: K. F. KELLY, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, Ashley Treutle, appeals as of right from the parties' judgment of divorce in this child custody action. For the reasons set forth in this opinion, we affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

## I. BASIC FACTS

The parties married in 2009, and three children were born during the marriage. Prior to their separation, the parties lived together in Almont, Michigan, and the older two children attended Almont Community Schools. Ashely filed for divorce in October 2022. She also sought a personal protection order (PPO) against defendant, John Treutle, alleging that he was engaging in abusive and stalking behavior. She included screenshots of text messages that he sent to her; in the messages, he stated that he hoped something "really bad" would happen to her, and he referred to her as a "dumbass," a "goddam piece of garbage," "fucking worthless," and "lazy as shit." Although John denied the allegations of abuse, he conceded that his communications were made in an effort to hurt her emotionally based upon his belief that she had engaged in an affair during the parties' marriage. The PPO was granted, as was a civil restraining order against John in the instant case. Throughout the proceedings, John continued to flout the restraining order by berating Ashley and sending her verbally and emotionally abusive messages.

During the proceedings, the court ordered the marital home to be sold. Thereafter, Ashley moved with the children to South Lyon, where she had secured a well-paying, flexible, part-time job as an oncology technician with medical benefits. She testified at the combined trial and evidentiary hearing that she had a good support system in the South Lyon area with friends from

-1-

church, as well as relatives, and her parents were moving to the area to support her. Ashley decided to relocate without input from defendant and without telling him her new address.

As relevant to the issues raised on appeal, after filing her complaint seeking divorce, Ashley also filed a verified motion requesting an ex parte order allowing her and the children to live with the maternal grandparents in Almont. She also requested physical custody of the children. The trial court entered the ex parte order on December 6, 2022, ordering that Ashley have physical custody of the children and that the parties share joint legal custody. John did not challenge the ex parte order or its provision granting her physical custody at the time of its entry or in the immediate time period thereafter. It was only after negotiations with Ashley were not fruitful that John filed a motion to modify the ex parte order with regard to the parenting time of the children. Ashley answered, contending that the ex parte order was a valid custody order and that John was required to establish proper cause or a change of circumstances before the court's custody order could be revisited. Following a hearing, the trial court denied John's motion, concluding that matters of custody and parenting time would be addressed at trial.

Finally, both parties filed motions regarding the children's schooling in August 2023, and the trial court scheduled an evidentiary hearing on the issue to be held in conjunction with the parties' divorce trial. Although Ashley's motion sought permission from the court to enroll the children in South Lyon public schools, because she had already moved to South Lyon, she was required to drive the children over an hour each way, every day, to attend school in Almont.

Following a six-day combined trial and evidentiary hearing, the trial court, focusing on the time period when the family was intact and living together before the parties separated, determined that the children had an established custodial environment with both parties and, after weighing the best-interest factors of MCL 722.23, determined that the parties were to share joint physical custody and joint legal custody. The trial court further ordered that parenting time would occur on a week-on and week-off schedule. With respect to the children's schooling, the trial court held that their established custodial environment was in Almont, and that it was in their best interests to continue to attend school in Almont. This appeal follows.

## II. ESTABLISHED CUSTODIAL ENVIRONMENT

### A. STANDARD OF REVIEW

There are three standards of review used in child-custody cases. *Sabatine v Sabatine*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165279); slip op at 5. A court's factual findings are reviewed under the great-weight-of-the-evidence standard. *Stoudemire v Thomas*, 344 Mich App 34, 42; 999 NW2d 43 (2022). Its discretionary rulings are reviewed for an abuse of discretion. *Id*. And "[q]uestions of law are reviewed for clear legal error," which occurs when the court "incorrectly chooses, interprets, or applies the law." *Id*. On appeal, Ashley argues that the trial court committed clear legal error by limiting its findings as it related to the children's established custodial environment to the children's pre-separation circumstances.

### B. ANALYSIS

When considering a proposed change affecting a child's welfare,

-2-

the trial court must first determine whether the proposed change would modify the established custodial environment of that child. In making this determination, it is the child's standpoint, rather than that of the parents, that is controlling. If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case. On the other hand, if the proposed change would not modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests. [*Pierron v Pierron*, 486 Mich 81, 92-93; 782 NW2d 480 (2010).]

"The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian as to permanency of the relationship shall also be considered." MCL 722.27(1)(c).

In this case, the trial court restricted its findings related to the children's established custodial environment to the circumstances that existed before their parents separated. In doing so, the court committed clear legal error. The record reflects that, following the parties separation, the trial court entered an order awarding Ashley physical custody. She lived for a time with the children in Almont and then moved with them to South Lyon. Between December 2022 and February 2024, therefore, John did not have physical custody over the children, who were living in another city. Although the children had parenting time with John, it is clear that their circumstances following their parents' separation were drastically different from the intact family unit that they enjoyed pre-separation.

"A judgment or order cannot change an established custodial environment that no longer exists." *Sabatine*, ___ Mich at ___; slip op at 8. And circumstances occurring after a child's parents separate may have destroyed or altered the established custodial environment before the court is called upon to make a decision. See *id*. at ___; slip op at 7-8. Thus, as recently explained by our Supreme Court:

[T]he circumstances of the parties at the time of separation or prior to separation might be relevant to determining whether an established custodial environment exists at the time the judgment of divorce is issued. For instance, in determining whether a custodial environment has been established over an appreciable time period, the trial court will often need to compare and contrast the lives of the children before separation and afterward. But the dispositive inquiry is not whether an established custodial environment existed prior to separation; rather, it is whether such an environment continues to exist, or a new one exists, at the time of the trial court's custody determination. The preseparation circumstances are only relevant to the extent that they continue to exist or are probative of whether a new established custodial environment exists at the time the trial court is rendering its

decision—in this case, when it issued the custody order. [*Sabatine*, ___ Mich at ___; slip op at 10.]

Thus, the trial court must determine the children's established custodial environment *at the time of the decision impacting the child's custodial environment is made*, not at the time that the children's parents first separated.

On appeal, John attempts to distinguish this case from *Sabatine*, specifically on the basis of the children's ages, the length of the trial and appellate proceedings, and the time that the children have spent with defendant. Yet, although the children in this case are older and the litigation has not been pending for as long, we conclude that the factual distinctions are not dispositive. *Sabatine* stands for the proposition that the trial court must consider up-to-date information when determining the child's current established custodial environment. Factual considerations, such as the age of the children and the length of the proceedings, may be relevant to that inquiry, but such considerations do not alter the legal framework within which the court must make its decision. Here, having only considered the children's pre-separation circumstances, the trial court committed clear legal error on a major issue. Consequently, reversal and remand for additional proceedings is required. See also *Butters v Butters*, 510 Mich 1096, 1097 (2022)[1] (holding that this Court correctly determined that on remand, the trial court was to consider all up-to-date information, including the reasonable preferences of the children, before deciding whether to modify a prior custody order) and *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994) (holding that "on remand, the court should consider up-to-date information, including the children's current and reasonable preferences, as well as the fact that the children have been living with the plaintiff during the appeal and any other changes in circumstances arising since the trial court's original custody order."). On remand, the trial court should consider up-to-date circumstances, as the parties are sharing joint custody pending this appeal. *Sabatine*, ___ Mich at ___; slip op at 7-8; *Fletcher*, 447 Mich at 889. In doing so, it is appropriate for the trial court to still consider pre-separation circumstances, and the circumstances that existed before February 5, 2024, in determining the children's established custodial environment.

## III. CHOICE OF SCHOOL DISTRICT

Ashley next argues that the trial court committed clear legal error on a major issue when resolving the parties' dispute over whether it was in the children's best interests to be enrolled in the South Lyon Schools or in Almont Community Schools. We agree.

If parties share joint legal custody, then both parents share joint decision-making authority with regard to important decisions that impact the child. *Pierron*, 486 Mich at 85, citing MCL 722.26(a)(7)(b). If the parents are unable to agree on an important choice such as the children's schooling, then the trial court is left to decide the matter in the best interests of the children. *Pierron*, 486 Mich at 85. One of the first determinations the trial court must make is whether the proposed change would alter the established custodial environment for the children. *Id*. "If the

---

[1] Orders of the Michigan Supreme Court are binding on this Court to the extent the Supreme Court's reasoning can be discerned. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; 923 NW2d 607 (2018).

required parenting time adjustments will not change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort, then the established custodial environment will not have changed." *Id.* at 86. But if the parenting time adjustments do create such a disruption in the children's established custodial environment, then the parent seeking the change may not seek the modification of the established custodial environment unless they first present clear and convincing evidence that it is in the best interests of the children to do so. *Id.*; see also MCL 722.27(1)(c). This is because "a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case." *Pierron*, 486 Mich at 92-93.

The trial court must then determine the best interests of the children by weighing the factors set forth in MCL 722.23. *Lombardo v Lombardo*, 202 Mich App 151, 160; 507 NW2d 788 (1993). The trial court is not permitted to merely determine that the party seeking the change in schools had failed to demonstrate the change was in the best interests of the child. *Id.* Failure to make necessary findings regarding the established custodial environment, as well as failure to consider all of the best-interest factors, is "fatal," and requires that the trial court's order be vacated and the case remanded to the trial court. *Marik v Marik*, 325 Mich App 353, 365; 925 NW2d 885 (2018).

At the conclusion of its bench ruling at the end of the trial and evidentiary hearing, when defense counsel inquired about the issue of the children's schooling, the trial court responded that the children's "established environment is here." The trial court also clearly stated that it did not believe that a *Lombardo* analysis was necessary because it found that Ashley's decision to go to South Lyon was arbitrary and was not supported by any need or evidence. As a result, the court ruled on the *D'Onofrio*[2] factors. The trial court's analysis on this issue was erroneous. After determining the existence of an established custodial environment, the court was required to consider first whether the proposed change in school districts would modify the established custodial environment, and then weigh the best-interest factors under MCL 722.23. Moreover, although the trial court's findings on the best-interest factors are permitted to be brief under MCR 3.210, the trial court in this case did not even consider the best-interest factors as relevant to the change of school issue and simply overlooked them. That the trial court did not conduct the proper analysis under Michigan law is made clear by its recitation of, and ruling on, the *D'Onofrio* factors, which were not applicable to this issue. By not analyzing the issue properly under Michigan law, the trial court clearly erred on a major legal issue, and the portion of the judgment of divorce holding that the children are required to attend Almont Community Schools is vacated and the case is remanded to allow the trial court to conduct a clear and cogent analysis in accordance with *Pierron*, 486 Mich 85-86, *Marik*, 325 Mich App at 364, and *Lombardo*, 202 Mich App at 160.

IV. MODIFICATION OF PHYSICAL CUSTODY AND BEST-INTEREST FACTORS

Ashley next argues that the trial court did not provide support for its parenting-time decision. Specifically, she contends that before making a change in parenting time to the week-on and week-off schedule, the trial court did not make a determination that the change was in the children's best interests. Ashley emphasizes that "the status quo had been primary custody with [her]," and the trial court did not conclude that any of the best-interest factors of MCL 722.23 favored John or his request for week-on and week-off parenting time. We agree with Ashley that

---

[2] *D'Onofrio v D'Onofrio*, 144 NJ Super 200, 365 A2d 27 (1976).

the portion of the judgment of divorce awarding John joint physical custody and granting equal shared parenting time should be vacated, and remanded for proceedings consistent with our analysis of this issue.

One of the main purposes of the Child Custody Act is to limit and minimize disruptive and unnecessary changes in a child's custody. *Mann v Mann*, 190 Mich App 526, 532, 533; 476 NW2d 439 (1991). Generally, the trial court may not modify custody, even on a temporary basis, without first conducting an evidentiary hearing. *Barretta v Zhitkov*, ____ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 364921 and 365078); slip op at 9-10. However, as the Court in *Barretta* recently recognized, situations may occur in which the trial court is authorized to modify custody immediately in the best interests of the child pending a full evidentiary hearing, but the trial court may only make such a determination after considering admissible evidence, in the form of affidavits, live testimony, documentation, or otherwise. *Id*. at ___; slip op at 10. Such situations arise when a party files an ex parte motion under MCR 3.207, which is applicable to child custody proceedings and allows a trial court to enter an ex parte order regarding custody if it is satisfied that the child faces a risk of imminent harm. *Id*. at ___; slip op at 10.

We acknowledge that the December 6, 2022 ex parte order contained notice deficiencies as it did not comply fully with the provisions of MCR 3.207. Specifically, the ex parte order did not inform John, as required by MCR 3.207(5), that

> [t]he ex parte order will automatically become a temporary order if you do not file a written objection or motion to modify or rescind the ex parte order and a request for a hearing. Even if an objection is filed, the ex parte order will remain in effect and must be obeyed unless changed by a later court order.

The fact that the ex parte order did not comply with the notice requirements of MCR 3.207 is important because if MCR 3.207 is not applicable, the trial court was required to hold an evidentiary hearing before making even a temporary change to the children's physical custody. *Mann*, 190 Mich App at 531-532.

However, the deficiency in the notice requirements, under the circumstances of this case amounted to harmless error. Ashley filed the ex parte verified motion on the basis of John's repeated and continual verbal and emotionally abusive behavior toward her, in the presence of the children. Because his behavior was so severe and continued to escalate, Ashley felt compelled to seek a restraining order in the instant proceedings, as well as a PPO in separate proceedings. She was able to demonstrate and support with the requisite evidence the immediate need for the entry of the ex parte order, because of the concerning and worrisome nature of the escalation of John's emotional, mental, and verbal abuse. The record also demonstrates that although in receipt of the ex parte order soon after its entry, John, represented by his lawyer and aware of the ex parte order's implications with respect to his physical custody, deliberately made a choice not to contest the entry of the ex parte order, in an effort to first negotiate with Ashley, and to limit his attorney fees. It was only in March 2023, over three months after the order's entry, when such negotiations were not fruitful, that John sought to modify the ex parte order. Accordingly, we conclude that any error on the part of the trial court in (1) not holding an evidentiary hearing before awarding Ashley physical custody of the children and (2) not complying with the notice provisions of MCR 3.207 were harmless.

-6-

All of this becomes very relevant because MCL 722.27(1)(c) places limitations on the authority of the trial court to alter its previous judgments or orders, stating, in pertinent part:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
>
> * * *
>
> (c) Subject to subsection (3), *modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances* until the child reaches 18 years of age . . . . [Emphasis added.]

The trial court, before modifying its December 6, 2022 ex parte order did not make the requisite determination regarding proper cause or a change of circumstances contrary to MCL 722.27(1)(c). While both parties focus their arguments on the modifications made to parenting time, this Court is not bound by Ashley's characterization of the trial court's decision, *Lieberman v Orr*, 319 Mich App 68, 77 n 4; 900 NW2d 130 (2017), and a review of the record, particularly the ex parte order and the parties' judgment of divorce, demonstrates that its decision clearly involved a modification of the children's physical custody. In *Vodvarka v Grasmeyer*, 259 Mich App 499, 508; 675 NW2d 847 (2003), this Court explained that the requirement that the party seeking to modify custody first demonstrate proper cause or change of circumstances arises from the Child Custody Act, and reflects the intent of our Legislature that, until a party meets that initial statutory burden, the trial court simply does not have the authority to revisit an otherwise valid custody decision or engage in a reconsideration of the statutory best-interest factors.

We acknowledge that in *Thompson v Thompson*, 261 Mich App 353, 358, 361; 683 NW2d 250 (2004), this Court concluded that the trial court was not required to make the threshold determination of a proper cause or a change of circumstances when the parties had entered into a stipulated order for temporary physical custody in favor of the plaintiff-father before trial on issues of custody. We further held that in entering the temporary order, the trial court had not awarded custody under MCL 722.27(1)(a) before the parties' divorce trial, but instead, its order entered following trial was a new order under MCL 722.27(1)(c) "and the original custody award," as opposed to a modification or amendment under the statute. *Thompson*, 261 Mich App at 358, 361-362. Therefore, the requirement of a proper cause or change of circumstances was not applicable. *Id*. at 361-362. *Thompson*, however, is both legally and factually distinguishable, given that it involved a temporary *stipulated* order, not an ex parte order entered to protect a family from domestic violence, and the court in that case was not called on to decide if an ex parte order entered under MCR 3.207 is an award of custody under MCL 722.27(1) or a previous judgment or order as contemplated by MCL 722.27(1)(c). Therefore, on remand, the trial court is instructed to determine whether John established proper cause or a change of circumstances as required by MCL 722.27(1)(c) before the court can revisit its determination whether to modify the children's physical custody.

Ashley next argues that the trial court erred in its analysis of the best-interest factors. Having closely reviewed her challenges to the trial court's ruling on the best-interest factors, we determine that only two of her claims of error with respect to the best-interest factors have merit.

First, with respect to factor (d), "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity," MCL 722.23(d), the trial court concluded that the "only stable satisfactory environment" that the children had was when the parents were together "and now everything is in chaos," and weighed this factor equally with regard to both parties. Ashley challenges the trial court's finding on this factor, asserting that the trial court clearly erred in not making factual findings regarding whether the children had a stable home environment either at her home in South Lyon or at John's home. Citing *Demski v Petlick*, 309 Mich App 404, 449; 873 NW2d 596 (2015), Ashley acknowledges that factor (d) is best addressed "by considering the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments."

To the extent that the trial court referenced that the children's home and school life were now chaotic, the trial court appeared to be referencing Ashley's decision to move to South Lyon without John's knowledge or consent. The testimony at the combined trial and evidentiary hearing also indicated that Ashley and the children were traveling well over an hour each way to attend school in Almont, so Ashley was not able to work a regular schedule and was relying on her savings to support the family. We agree that the trial court did not render detailed factual findings that would allow for meaningful appellate review with respect to whether both parties' home situations were stable and satisfactory, and the trial court also did not address the need to maintain continuity in a secure and stable environment within each parent's custody. MCL 722.23(d). By not addressing the proper legal considerations under MCL 722.23(d), and merely characterizing the children's home life as "chaotic" in a perfunctory manner, the trial court clearly erred.

Similarly, after considering factor (e), "the permanence, as a family unit, of the existing or proposed custodial home or homes," MCL 722.23(e), the court held that because the permanent family unit was broken, this factor weighed equally in favor of both parties. As Ashley argues, the trial court did not address the permanence, as a family unit, of each proposed custodial home under MCL 722.23(e). By not taking into consideration the permanence of the family unit or the proposed custodial homes, the trial court did not comply with the statutory directive, and therefore erred as a matter of law in its consideration of this factor. On remand, the trial court will need to reconsider its weighing of these factors as it makes its custody determination.

We affirm in part and vacate in part the February 5, 2024 judgment of divorce and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly