*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MEEGAN POPOFF,

        Plaintiff-Appellant,

v

SUBIK SINGH,

        Defendant-Appellee,

and

JESSICA FOX, and WILLIAM FOX,

        Defendants.

UNPUBLISHED
February 20, 2026
11:42 AM

No. 373221
Genesee Circuit Court
LC No. 2023-119233-NI

Before: BORRELLO, P.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

In this negligence action, plaintiff Meegan Popoff appeals by right the trial court's order granting summary disposition in favor of defendant Subik Singh under MCR 2.116(C)(10) (no genuine issue of material fact, moving party entitled to judgment as a matter of law).[1] We affirm.

## I. BACKGROUND

In the early evening of New Year's Day, 2023, defendant lost control of his vehicle and caused a three-car accident in the southbound lanes of the I-75 expressway. Per the Michigan State Police Incident and Traffic Crash reports, the collision occurred at approximately 6:30 p.m.,

---

[1] Defendants Jessica and William Fox were dismissed from the instant lawsuit by stipulation in April 2024 and are not parties to this appeal. Accordingly, we will refer to defendant Singh simply as "defendant" in this opinion.

and all three vehicles involved ultimately came to rest in the ditch on the righthand side of the expressway. Defendant was subsequently arrested for operating his vehicle while intoxicated.

A responding officer parked on the right shoulder of the expressway, with emergency lights activated, to police the accident. According to the officer's report, "this caused traffic to slow down and merge to the center and left lanes." At the same time, "multiple vehicles pulled off on the left shoulder" due to the accident that had occurred. Plaintiff was among those to do so. In her deposition, plaintiff testified that she initially did not realize there was an accident, but noticed the right two lanes "slamming" on their brakes and traffic in the left lane also beginning to slow. Plaintiff waited on the shoulder for approximately 9-10 minutes and then, with traffic moving again and the left lane appearing clear, she attempted to merge back onto the expressway. At that same time, however, defendant Jessica Fox merged into the left lane from the center lane, rear-ending plaintiff. According to the accident reports, this second collision occurred at approximately 6:45 p.m.

In an interview with police, Fox stated that she was traveling southbound on I-75 when she noticed emergency lights and that traffic was stopping. Fox reported that several cars were changing lanes suddenly from the right and center lanes in order to move away from the accident scene. Fox stated that as she entered the left lane, plaintiff pulled out in front of her; Fox was unable to stop in time and collided with plaintiff's vehicle. It is undisputed that, at the time of plaintiff's collision with Fox, all three lanes were physically unobstructed by the initial collision, but police were present on the righthand shoulder of the expressway.

In July 2023, plaintiff filed the underlying complaint in this lawsuit. In relevant part, plaintiff alleged that defendant had negligently operated his vehicle and that his negligence—and the active policing of the accident scene that it required—proximately caused her ensuing collision with Fox and the serious injuries she sustained from it, including paralysis and a traumatic brain injury.

The following July, defendant moved for summary disposition under MCR 2.116(C)(10). Defendant argued that his initial collision and plaintiff's subsequent one with Fox were discrete occurrences, and too remote from one another for his negligence in the first to be considered a proximate cause of the second. Defendant also argued that he did not owe plaintiff a duty of care. Plaintiff responded that a reasonable factfinder could conclude that the initial collision was a proximate cause of her injuries because it affected traffic sufficiently to cause the second collision. In support, plaintiff cited portions of the accident reports and her own deposition testimony, which all stated that the first collision "caused" the second. Additionally, plaintiff offered an affidavit from an accident reconstructionist, who opined that the first collision caused the second.

In August 2024, the trial court held a hearing on defendant's motion for summary disposition. Ultimately, the court granted the motion on the basis of proximate cause, concluding that the second collision was too far removed as a matter of law from defendant's negligence in the initial collision. The trial court acknowledged that plaintiff pulling over to the shoulder was a foreseeable result of the initial collision, but determined that her decision to then wait nearly 10 minutes on the shoulder before attempting to reenter the highway, along with Fox's decision to change lanes at the time of that eventual reentry, rendered the connection with the first collision so attenuated that reasonable minds could not find proximate cause. In support of its analysis, the

trial court, like defendant, pointed to caselaw from this Court—in particular, *Deaton by Deaton v Baker*, 122 Mich App 252; 332 NW2d 457 (1982), and *Derbeck v Ward*, 178 Mich App 38; 443 NW2d 812 (1989). And, in light of its conclusion regarding proximate cause, the trial court declined to address defendant's alternative argument that he did not owe plaintiff a duty of care. This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Bartalsky v Osborn*, 337 Mich App 378, 382; 977 NW2d 574 (2021). "When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the nonmoving party and grants summary disposition only if the evidence fails to establish a genuine issue regarding any material fact." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 113; 923 NW2d 607 (2018). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).

## III. DISCUSSION

On appeal, plaintiff argues that the trial court erred by concluding that defendant's negligence was not, as a matter of law, a proximate cause of her injuries. We disagree.

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 508; 991 NW2d 230 (2022). As our Supreme Court has explained,

> Proximate cause is an essential element of a negligence claim. It involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. Proximate cause is distinct from cause in fact, also known as factual causation, which requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred. . . . [A] court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries. [*Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017) (cleaned up).]

"Proximate cause is a question for the jury to decide unless reasonable minds could not differ regarding the issue." *Lockridge v Oakwood Hosp*, 285 Mich App 678, 684; 777 NW2d 511 (2009).

The parties in this case do not dispute that there is sufficient evidence to demonstrate that defendant's negligence in operating his vehicle was a cause in fact of plaintiff's subsequent collision with Fox and her resulting injuries. Defendant, however, maintains—and the trial court likewise concluded—that no jury-submissible question exists in this case regarding proximate

cause in light of our decisions in *Deaton* and *Derbeck*. We agree that this line of caselaw supports defendant's position, and we find no reason to depart from it here.[2]

The plaintiff in *Deaton* was a passenger in the defendant's car. 122 Mich App at 255. While the defendant was backing the car out of a driveway, a second car struck it. *Id*. The defendant exited his car, which was stopped in the road, to go speak with the other driver, who had pulled over a bit further down the road. *Id*. The plaintiff, meanwhile, got out of the defendant's car to inspect the damage and, while doing so, was himself struck by a third vehicle. *Id*. at 256. This second collision occurred "[t]wo to five minutes after the first collision," and the driver of the third vehicle explained that, due to the headlights of the second car, he could not see the defendant's car stopped in the road. *Id*. This Court agreed with the trial court that the defendant's "negligence in the first accident, if so determined, as a matter of law cannot be a proximate cause of [the] plaintiff's injuries resulting from the second accident, even though . . . the second accident would not have occurred had it not been for the first accident having happened." *Id*. at 258; see also *id*. (explaining that the defendant was "correct in his assertion that there existed a hiatus in essential proof connecting the negligence of [the defendant] in the first collision, accepted as pled, and plaintiff's eventual injury in the second collision"). This Court, however, found that there was a question of fact as to whether the defendant's allegedly negligent conduct after the first collision—namely, "in leaving his car blocking the highway after the accident with no lights on"— was a proximate cause of the plaintiff's injuries. *Id*. at 259.

In *Derbeck*, the plaintiff was riding his motorcycle when he collided with the defendant's car, which had been left in the road. 178 Mich App at 42. The plaintiff alleged that the defendant, while intoxicated, had struck a telephone pole and had then "left her vehicle in the roadway without activating her emergency flashers or lights and failed to take any precautions to warn oncoming motorists of the existence of her disabled vehicle in the roadway." *Id*. Then, "[f]ive to ten minutes after the defendant abandoned" her car, the plaintiff collided with it. *Id*. at 42-43. The plaintiff sued the defendant, alleging negligence both from the defendant's initial conduct in operating her vehicle, and from the defendant's subsequent conduct in leaving the vehicle in the road. *Id*. at 43.

---

[2] Plaintiff stresses that, because these decisions were issued prior to November 1, 1990, we are not strictly bound by them. See MCR 7.215(J)(1). True as that may be, the decisions still carry precedential value and, for the reasons set forth in this opinion, we find them on point here. See, e.g., *People v Moore*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371556); slip op at 4 n 2 ("Although published decisions of this Court issued prior to November 1, 1990, are not strictly binding upon us, all published decisions of this Court are precedential under the rule of stare decisis and generally should be followed.") (quotation marks and citation omitted); *New Covert Generating Co, LLC v Covert Twp*, 334 Mich App 24, 48 n 3; 964 NW2d 378 (2020) ("This Court is not required to follow the rule of law established by an opinion of this Court published before November 1, 1990. See MCR 7.215(J)(1). However, under traditional principles of stare decisis, pre-1990 decisions continue to have precedential effect."); *People v Bensch*, 328 Mich App 1, 7 n 6; 935 NW2d 382 (2019) ("[W]hile we are not 'strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990,' those opinions are nonetheless 'considered to be precedent and entitled to significantly greater deference than are unpublished cases.' ") (quoting *Woodring*, 325 Mich App at 114-115).

-4-

Looking to *Deaton*, this Court agreed with the trial court that partial summary disposition was warranted on the allegations regarding the defendant's initial conduct because "such alleged negligence was not a proximate cause of [the] plaintiff's personal injuries." *Id*. at 40. This Court explained that "[t]he defendant's prior negligent acts in operating her vehicle, alone, were not a substantial factor in causing the later collision between [the] plaintiff's motorcycle and [the] defendant's unoccupied and disabled vehicle," and "[w]ithout negligence in regard to leaving the scene or failing to warn, a cause of action cannot be sustained." *Id*. at 46.

In light of this caselaw, we see no error in the trial court's conclusion that dismissal of plaintiff's claim against defendant was warranted. As discussed, while *Deaton* and *Derbeck* left open the possibility that the defendants' allegedly negligent conduct following their initial collisions may be a proximate cause of the plaintiffs' injuries, they both concluded that the defendants' alleged negligence in causing the initial collisions could not be. There is no dispute in this case that defendant's alleged negligence was limited to his conduct in causing the first collision, and we fail to see how that negligence could be a proximate cause of plaintiff's ensuing collision with Fox when such causation was found lacking as a matter of law between the first and second collisions in both *Deaton* and *Derbeck*. For instance, the temporal gap between the first and second collisions in those cases was lesser, or at least no greater, than the gap at issue here, and the second collisions in both of those cases were with vehicles directly involved in the first collisions. There is certainly evidence in this case that defendant's negligence was a cause in fact of plaintiff's subsequent collision with Fox. But given the undisputed circumstances of that second collision, we fail to see how it could be deemed any more foreseeable or connected to defendant's negligence than was the case in *Deaton* and *Derbeck*.[3]

Plaintiff attempts to counter this caselaw with *Dillon v Tamminga*, 64 Mich App 305; 236 NW2d 718 (1975), and *Davis v Thornton*, 384 Mich 138; 180 NW2d 11 (1970), but we do not find that those cases compel a different outcome here. In *Davis*, the defendant parked his work vehicle and left it unattended with the keys still in the ignition and the doors unlocked; a group of minors then took the vehicle for a joyride and collided with the plaintiffs' car. *Id*. at 141. Our Supreme Court rejected the notion that the defendant's negligence in how he left the vehicle could not be a proximate cause of the plaintiffs' injuries. *Id*. at 142. The Court explained that the defendant's conduct violated a city ordinance that had been passed with this very scenario in mind: "it was intended to prevent, first, the meddlers and, second, the consequences of their meddling—one of which consequences is the threat to life and property posed by a fleeing thief or joyriding youth."

---

[3] Pointing to particular language in each decision, plaintiff argues that *Deaton* and *Derbeck* are "irrelevant" because they performed only "factual, not legal cause, analyses." We disagree. *Deaton* made clear that its analysis was based on the absence of proximate, not factual, cause. See 122 Mich App at 258 (concluding that any negligence in the first accident "as a matter of law cannot be a proximate cause of plaintiff's injuries resulting from the second accident, even though, as plaintiffs' counsel argued, the second accident would not have occurred had it not been for the first accident having happened"). *Derbeck*, in turn, based its substantive analysis and conclusion on *Deaton*, see *Derbeck*, 178 Mich App at 44-45, and while it used "cause in fact" language in doing so, see *id*. at 46, we do not see how that (perhaps imprecise) language would render the decision's substantive analysis and conclusion wholly irrelevant here.

*Id*. at 149 (footnotes omitted). The Court "therefore h[e]ld that reasonable men might have concluded that leaving the keys in the ignition under these circumstances was not too remote a cause of the plaintiff's injuries and that the joyrider's intervention did not sever that causal connection." *Id*. The record in this case, however, reflects no comparable connection between defendant's negligence in operating his vehicle and the collision between plaintiff and Fox that later occurred, such that the latter could be deemed a foreseeable consequence of the former for which defendant "should be held legally responsible." *Ray*, 501 Mich at 63 (citation omitted).

Similarly, in *Dillon*, a stop sign at an intersection was destroyed when the defendant lost control of his vehicle while drag racing. 64 Mich App at 306-307. About 23 hours later—and before the stop sign had been fixed or replaced—a car in which the plaintiff was a passenger approached the intersection, proceeded into it without stopping, and was struck by another vehicle, resulting in injuries to the plaintiff. *Id*. at 307. This Court concluded that summary disposition should not have been granted on the basis of proximate cause, explaining that "[t]he logical link between a negligent driver colliding with a roadside object and that object resulting in a hazard to other drivers using the road is not so attenuated as to be unreasonable." *Id*. at 310.[4] While there was certainly a greater temporal gap between the accidents in *Dillon* than those at issue here, there was also a more direct connection between the negligence of first accident and the ensuing harm; the first accident directly produced the immediate condition that caused the later accident. We find that the circumstances in this case are more causally attenuated than those in *Dillon* and more closely analogous to those in *Derbeck* and *Deaton*, and so we follow those latter decisions here.

Lastly, plaintiff argues that summary disposition on the issue of proximate cause was improper in light of our Supreme Court's statements in *Davis* that "[t]he determination of remoteness . . . should seldom, if ever, be summarily determined," and instead "should almost always be left to the jury." 384 Mich at 147-148. Similarly broad statements, however, can be found in support of defendant's bid for judgment as a matter of law on this issue. See, e.g., *Moning v Alfono*, 400 Mich 425, 438, 440; 254 NW2d 759 (1977) (stating that "[t]he question of proximate cause, like the question of duty, is essentially a problem of law," and "[w]hile the court decides questions of duty, general standard of care and proximate cause, the jury decides whether there is cause in fact and the specific standard of care") (quotation marks and citation omitted). Regardless, as *Davis* and subsequent precedent alike have recognized, the ultimately dispositive inquiry is whether reasonable minds could differ on the point. See, e.g., *Davis*, 384 Mich at 146; *Lockridge*, 285 Mich App at 684. The trial court concluded that, in this case, they could not. For the reasons discussed, we find no error in that conclusion or the award of summary disposition to defendant on its basis.[5]

---

[4] The court further concluded that "a reasonable man could find that the city's failure to replace the stop sign was not an intervening cause which cut off defendant's liability," and so summary disposition was not warranted on that basis, either. *Id*. at 310.

[5] In light of this determination, we (like the trial court) need not reach defendant's alternative argument that summary disposition in his favor was warranted because he did not owe plaintiff a duty.

Affirmed.

/s/ Stephen L. Borrello
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock