*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. L. SMITH, Minor.

UNPUBLISHED
May 15, 2026
9:28 AM

No.  376904
Wayne Circuit Court
Family Division
LC No.  2024-001635-NA

Before:  KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to his son, DLS.  On appeal, respondent contends that (1) the trial court erred by terminating respondent's parental rights at the initial disposition because it failed to articulate a finding that aggravated circumstances existed, and (2) the trial court erred by finding that termination was in DLS's best interests.  For the reasons stated in this opinion, we disagree with respondent regarding a failure to find aggravated circumstances, but we agree, in part, that the trial court erred in its best-interest determination.  We therefore affirm in part, vacate in part, and remand for further proceedings.

## I.  BACKGROUND AND FACTS

Petitioner, the Michigan Department of Health and Human Services (DHHS), filed a petition seeking to terminate respondent's parental rights to DLS after it investigated and substantiated allegations that respondent had repeatedly sexually abused DLS's 14-year-old half-sister, LB.  The children's mother reported that after she kicked respondent out of the house for cheating on her, she found inappropriate text messages between respondent and LB on LB's phone.  LB then disclosed to her that respondent had been molesting her over the past year.  The mother reported the matter to law enforcement, and LB confirmed at a forensic interview that respondent inappropriately touched her both above and below her clothing, and that respondent penetrated her with his fingers.  At a subsequent meeting with Children's Protective Services (CPS), the children's mother reported that she posted on Facebook about the incident as a warning and received numerous messages expressing similar concerns about respondent.  In particular, the mother reported, respondent's ex-wife "reached out indicating that she wished she would have

-1-

warned [the mother] and that her divorce from [respondent] was due to him molesting her daughter."

Respondent was instructed by law enforcement during their investigation "not to have any contact with her[1] or anybody." As a result, by the time of the October 2024 preliminary hearing in this matter, respondent had not been in contact with DLS since July 2024. Respondent repeatedly sought supervised parenting time with DLS, but before a session could be arranged, respondent was arrested and charged with criminal sexual conduct. As a condition of his bond, respondent was prohibited from having contact with anyone under 18 years old, which prohibited supervised parenting time with DLS.

At a combined adjudication and dispositional hearing, DHHS offered its investigative summary of the case, in a document that it referred to as a CPS 154, as the factual basis to establish jurisdiction and statutory grounds. Respondent pleaded no contest. After reviewing the CPS 154 document, the trial court determined it had jurisdiction over DLS pursuant to MCL 712A.2(b)(1) (failure to provide proper care and custody due to neglect or abandonment), and (2) (unfit home environment due to neglect). The court further found statutory grounds for termination existed under MCL 712A.19b(3)(b)(*i*) (parent caused physical or sexual abuse of child or sibling and there is a reasonable likelihood of injury if the child is placed with the parent), (j) (reasonable likelihood of harm if returned to parent), and (k)(*ii*) (abuse of the child or sibling involving criminal sexual conduct with penetration, attempted penetration, or intent to penetrate). Specifically, the trial court found that respondent had sexually abused DLS's half-sibling, LB, that there was a reasonable likelihood that the behavior would continue, and that based on respondent's conduct, or capacity, there was a reasonable likelihood DLS would be harmed if returned to respondent's care. The court referred the case to the Family Assessment Center for a best-interest report and recommendation before proceeding to disposition.

Before the best-interest hearing, respondent pleaded no contest to second-degree criminal sexual conduct, MCL 750c(1)(b), in the criminal case arising from the allegations that he sexually abused LB. He was sentenced to 4 to 20 years' incarceration, and as part of his plea respondent was to have no contact with any children under 18 years of age.

At the best-interest hearing, the trial court ruled that termination was in DLS's best interests. The court cited the allegation that respondent also molested his ex-wife's child in its findings and opined that respondent's abuse of LB was not an isolated incident. The trial court then noted that there was no testimony to indicate the strength of the bond between respondent and DLS, but the evidence suggested DLS's mother's bond with DLS was stronger. The trial court also stated that respondent's parenting ability was "deficient" because respondent molested a child in his household, which he denied in the Family Assessment Services best-interest assessment. The sex of the complainant, in the trial court's opinion, was irrelevant because respondent allegedly sexually abused children "in and around his orbit." The court additionally stated that DLS's mother was providing permanency and stability to DLS, and placement with DLS's mother could provide finality regarding whether respondent may continue to have a role in DLS's life. Lastly, the trial court noted respondent would be incarcerated for 4 to 20 years and barred from

---

[1] Based on the context of the statement we assume "her" refers to LB.

having contact with children under 18 years of age. The court stated, that "conceivably, he could have no contact pursuant to the criminal order until [DLS] is of the age of majority," which favored termination.

The trial court entered an order terminating respondent's parental rights, and this appeal ensued.

## II. ANALYSIS

## A. AGGRAVATED CIRCUMSTANCES

Respondent first contends that the trial court failed to determine whether aggravated circumstances existed to warrant termination of respondent's parental rights at the initial disposition. We disagree.

Respondent did not raise this issue in the trial court. Accordingly, it is not preserved for appellate review. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). This Court reviews unpreserved issues in termination cases for "plain error affecting substantial rights." *In re MJC*, 349 Mich App 42, 47; 27 NW3d 122 (2023). Under this standard, reversal may be warranted if a plain error "caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 8, citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). After a respondent has satisfied these requirements, "an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings." *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020) (cleaned up).

"DHHS has an affirmative duty to make reasonable efforts to achieve reunification before a court may terminate parental rights" in most cases. *In re Barber/Espinoza*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 167745); slip op at 3 (citation omitted). Under the circumstances delineated in MCL 712A.19a(2), however, a trial court may "hold a combined adjudicative and dispositional hearing in which parental rights may be terminated at the initial dispositional hearing." *In re Barber/Espinoza*, ___ Mich at ___; slip op at 3. MCL 712A.19a(2) states: "Reasonable efforts to reunify the child and family must be made in all cases except if . . . [t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, . . . MCL 722.638." "Under no circumstances may a trial court terminate a parent's rights without first finding that one of these exceptions applies." *In re Walters*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369318); slip op at 1. A trial court's determination that aggravated circumstances exist must be supported by clear and convincing evidence to bypass the requirement that DHHS is required to expend reasonable efforts for reunification. *In re Barber/Espinoza*, ___ Mich at ___; slip op at 4 (citation omitted).

Relevant to this appeal, MCL 722.638 states:

(1) The department shall submit a petition for authorization by the court under [MCL 712A.2(b)] if 1 or more of the following apply:

(a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

* * *

(ii) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

* * *

(2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under . . . MCL 712A.19b. [See also *In re Barber/Espinoza*, ___ Mich at ___; slip op at 3-4, quoting MCL 722.638.]

Our Supreme Court has explained:

[I]f the court makes a determination that the circumstances in *both* MCL 722.638(1) and MCL 722.638(2) have been demonstrated, DHHS is not obligated to make reasonable efforts to reunify the family. MCL 712A.19a(2)(a). Where reasonable efforts toward reunification are not required, the trial court may terminate parental rights at the initial disposition as contemplated by MCL 712A.19b(4). [*In re Barber/Espinoza*, ___ Mich at ___; slip op at 12.]

Here, respondent asserts the trial court "failed to make a determination that aggravated circumstances existed." This failure, he argues, contravenes language in an order issued by our Supreme Court directing a circuit court to "articulate a factual finding based on clear and convincing evidence that aggravated circumstances exist such that services are not required." *In re Simonetta*, 507 Mich 943, 943; 959 NW2d 170 (2021).[2] In that case, this Court subsequently determined that "a fetus is not a 'child' under the Probate Code," and consequently, a mother does not subject her child to aggravated circumstances by using substances during pregnancy. *In re Simonetta*, 340 Mich App 700, 703; 987 NW2d 919 (2022).

Respondent's reliance on *In re Simonetta* is unpersuasive. There, we recognized that MCL 712A.19a(2) was intended to require reasonable efforts toward reunification except when a child was "severely harmed by deliberate postdelivery conduct." *In re Simonetta*, 340 Mich App at 713. That case involved an open question about whether certain conduct involving maternal substance

___

[2] "Supreme Court orders are binding precedent 'to the extent they can theoretically be understood, even if doing so requires one to seek out other opinions . . . .' " *West v Dep't of Natural Resources*, 333 Mich App 186, 192; 963 NW2d 602 (2020), quoting *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; 923 NW2d 607 (2018).

use constituted such an aggravating circumstance excusing the reasonable effort requirement of MCL 712A.19a(2). The same cannot be said in this case, where it is clear that respondent's conduct satisfied the definition of aggravated circumstances.

The initial petition seeking termination of respondent's parental rights may not explicitly reference MCL 712A.19a(2) or MCL 722.638, but it does allege "[a]ggravated circumstances as to father—sexual penetration to half sibling." The petition further alleged conduct that plainly falls within the statute. It is undisputed that respondent is a parent of DLS as required by MCL 722.638(1)(a). The petition details allegations that respondent sexually abused DLS's half-sibling, LB, and that abuse included digital penetration. The allegations thus unambiguously satisfy MCL 722.638(1)(a)(*ii*): a parent abused a sibling of the child, and the abuse included criminal sexual conduct involving penetration. See *In re Barber/Espinoza*, ___ Mich at ___; slip op at 3-4. The petition also asserts that DLS was at risk of threatened harm or sexual abuse. Because respondent was a suspected perpetrator, DHHS was permitted to request termination of respondent's parental rights at the initial dispositional hearing as provided in MCL 722.638(2). See *In re Barber/Espinoza*, ___ Mich at ___; slip op at 4.

At the March 2025 dispositional hearing, DHHS offered the CPS 154 as a factual basis to establish jurisdiction and statutory grounds. Respondent entered a no-contest plea after the court explained his parental rights may be terminated at the initial disposition. Consequently, the trial court considered the CPS 154 and articulated its factual findings based on the document. The court found, by clear and convincing evidence, that (1) respondent is DLS's father, and (2) respondent allegedly sexually abused DLS's half-sibling, LB, on multiple occasions by digital penetration. Accordingly, the trial court articulated findings of fact sufficient to establish the existence of aggravated circumstances at the dispositional hearing. See *id*. at ___; slip op at 4 ("The trial court must find by clear and convincing evidence that aggravated circumstances exist in order to excuse the reasonable-efforts requirement."). The court's failure to specifically use the term "aggravated circumstances," MCL 712A.19a(2), or explicitly cite MCL 722.638, did not affect respondent's substantial rights and therefore does not warrant reversal in this case. See *In re Utrera*, 281 Mich App at 9; *In re MJC*, 349 Mich App at 54.

We further distinguish this matter from this Court's recent decision in *In re Berryman/Hurd/Morgan/Morgan-Hurd*, ___ Mich App ___; ___ NW3d ___ (2026) (Docket No. 374775). In that case, DHHS filed a petition requesting that the trial court take jurisdiction over six children and terminate the respondents' parental rights at the initial disposition after one of the children was shot by a then-six-year-old cousin while in respondents' care. *Id*., slip op at 2. DHHS did not contend in its petition that aggravated circumstances existed to justify termination at initial disposition, nor did DHHS argue as much at the subsequent preliminary hearing. *Id*. Yet the court provided in its corresponding written order authorizing the petition that it determined reasonable efforts toward reunification were not required because aggravated circumstances existed, which consisted of "[i]mproper supervision" and "unfit home." *Id*. (alteration in original). Following a two-day bench trial, the trial court found that statutory grounds for jurisdiction under MCL 712A.2(b)(1) and (2) had been established by a preponderance of the evidence, and that statutory grounds for termination under MCL 712A.19b(3)(b)(*ii*) (failure to prevent injury or abuse of child or sibling), (g) (failure to provide proper care and custody), (j), and (k)(*iv*) (parent abused child or sibling causing serious impairment), had been established by clear and convincing evidence. The court further determined, after a multiday best-interest hearing, that termination of

the respondents' parental rights at the initial disposition was in the children's best interests, and it subsequently issued an order terminating the respondents' parental rights. *Id*. at \_\_\_; slip op at 2-3.

On appeal, this Court held that the trial court plainly erred "by excusing DHHS from its obligation to provide reasonable efforts toward reunification and instead terminating respondents' parental rights at initial disposition." *Id*. at \_\_\_; slip op at 7. The Court noted that the court "never articulated the factual basis for that apparent conclusion or how any such factual basis met the clear-and-convincing-evidence standard," and it "did not mention or purport to address 'aggravated circumstances' at the preliminary hearing, nor did it provide any indication to the parties that it was making a judicial determination of aggravated circumstances based on the facts and allegations before it." *Id*. at \_\_\_; slip op at 5. This Court further highlighted that "in its subsequent termination order, the court not only failed to make any finding that aggravated circumstances existed, but also erroneously indicated that reasonable efforts toward reunification had been made," and, "DHHS, for its part, did not cite to MCL 712A.19a(2)(a) or MCL 722.638 in its petition requesting termination at initial disposition," nor did the agency provide the underlying basis for finding aggravated circumstances during the 19-month proceedings. *Id*. at \_\_\_; slip op at 5-6. The Court additionally stated that the trial court's written order after the preliminary hearing provided the "only potential insight into the substantive basis for the court's finding of aggravated circumstances," but neither improper supervision nor an unfit home were explicitly listed as a basis for the judicial determination of aggravated circumstances under MCL 722.638(1)(a). *Id*. at \_\_\_; slip op at 6. The Court further recognized that "[t]he shooting incident was certainly tragic and also troubling, inasmuch as several young children . . . were left without adult supervision in an area of [the] respondents' home containing an unsecured, loaded gun." *Id*. at \_\_\_; slip op at 7. But "although [the injured child] may have suffered 'serious physical harm,' the trial court made no finding—and the [record did] not indicate—that [the child's] injuries were 'included' in any 'abuse' of him or his siblings by respondents (or any other listed individual), as required by MCL 722.638(1)(a)." *Id*. The Court concluded that the trial court's plain error prejudiced the respondents such that reversal was justified, and it vacated the trial court's order terminating the respondents' parental rights. *Id*.

We acknowledge that the trial courts in both *In re Berryman/Hurd/Morgan/Morgan-Hurd* and in the present case failed to expressly reference "aggravated circumstances" or the pertinent statutory provision governing termination at the initial disposition. But unlike *In re Berryman/Hurd/Morgan/Morgan-Hurd*, the record here thoroughly detailed a legally sufficient basis for termination—namely, the sexual abuse of the minor child's half-sibling—which plainly falls within the scope of MCL 722.638(1)(a)(*ii*) and was established by clear and convincing evidence. Cf. *id*., \_\_\_ Mich App at \_\_\_; slip op at 6 ("And even when we attempt to glean what the underlying reasons for those findings may have been, it is not apparent how, in this case, they would constitute 'abuse' within the meaning of the statute."). Moreover, respondent entered a no-contest plea to the allegations in the petition and the accompanying CPS report regarding that abuse, thereby permitting termination at the initial disposition. Respondent was also criminally charged for the same conduct.

In sum, DHHS specifically alleged that aggravated circumstances existed in its petition and the trial court articulated factual findings based on the CPS 154 establishing the existence of aggravated circumstances. The case that respondent relies on, *In re Simonetta*, 340 Mich App 700,

involves questions about whether certain behaviors are included in the aggravated-circumstances exception but respondent does not argue that his sexual abuse of LB was not an aggravating circumstance. Rather, he argues the trial court "failed to make a determination that aggravated circumstances existed." We recognize the importance of the legal and procedural safeguards that bar termination at the initial disposition, except in the narrowly circumscribed "rare circumstances provided by statute," in light of the fundamental parental rights at stake. *In re Barber/Espinoza*, ___ Mich at ___; slip op at 3. But the trial court's omission of the words "aggravated circumstances" or reference to the pertinent statutes does not negate the factual findings it articulated establishing their existence and to which respondent pleaded no contest. Accordingly, under the applicable plain-error standard of review, reversal is not warranted. See *Pederson*, 331 Mich App at 463.

## B. BEST INTERESTS

Respondent next contends that the trial court erred in finding that termination was in DLS's best interests. We agree, in part.

Once a trial court has determined one or more statutory grounds for termination have been proven by clear and convincing evidence, it must assess whether, by a preponderance of the evidence, termination is in the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). A trial court's best-interest determination is reviewed for clear error. *Id*.; see also MCR 3.977(K). "A trial court's decision is clearly erroneous '[i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012), quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

"The trial court should weigh all the evidence available to determine the [child's] best interests." *In re White*, 303 Mich App at 713. The focus at this stage is on the child, not the parent. *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013). In making the determination, the court should consider numerous factors, including " ' the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality.' " *In re White*, 303 Mich App at 713, quoting *In re Olive/Metts*, 297 Mich App at 41-42. Parenting time history is also relevant. *In re White*, 303 Mich App at 714. "The trial court's findings need not be extensive; '[b]rief, definite, and pertinent findings and conclusions on contested matters are sufficient.' " *In re MJC*, 349 Mich App at 62, quoting MCR 3.977(I)(1).

### 1. INDIVIDUALIZED BEST-INTEREST FINDINGS

In challenging the trial court's best-interest determination, respondent first argues that the trial court erred by focusing its best-interest analysis on respondent and failed to make individualized findings about the best interests of DLS. We disagree.

It is true that DHHS, through its CPS specialist, Patricia Fields, relied heavily on the sexual abuse allegations against respondent and his no-contest plea to the criminal charges arising from that conduct to argue that termination was in DLS's best interests. Contrary to respondent's assertion, however, the trial court did *not* find "termination was in DLS's best interest simply because 'no child, be it male or female, should be around him in the future because he is a threat

to the harm of children, period.' " Rather, the trial court analyzed several best-interest factors specific to DLS's individualized needs, including the parent-child bond, respondent's parenting ability, and the child's need for permanency, stability, and finality.

First, the trial court found that the strength of any bond DLS had with respondent was not evident. Respondent was instructed by detectives "not to have contact with her or anybody" in July 2024, and in January 2025 or February 2025 was prohibited from having contact with persons under 18 years of age as a condition of his bond. In the interim, the trial court sought to procure an assessment of whether supervised parenting time would be appropriate. Based on this timeline, respondent had no contact with DLS for nearly one year by the best interest hearing in June 2025. At that hearing, Fields indicated that "[DLS] only asked for [respondent] one time to buy him something from Walmart." DLS's statements to the lawyer-guardian ad litem are similar. DLS stated that "he does want to see and talk to his father" but for the purpose of respondent buying him toys and candy. The sparse evidence on this point supports the trial court's finding that DLS did not have a particularly strong bond to respondent in comparison to DLS's bond with his mother.

Additionally, respondent was sentenced to at least four years' incarceration and is not to have contact with children under 18 years of age. He could be incarcerated until June 2040. The trial court noted that "conceivably, [respondent] could have no contact pursuant to the criminal order until [DLS] is of the age of majority. That cuts against maintaining a parent/children relationship." Whatever bond exists between respondent and DLS will be affected by respondent's incarceration. At a minimum, respondent will be incarcerated until DLS is at least nine years old, but respondent's time served could extend until DLS is an adult. Considering the length of respondent's incarceration term and the associated prohibition on respondent's contact with minors, respondent could be restricted from having contact with minors for the duration of DLS's childhood. The trial court thus considered DLS's individualized situation in finding that avoiding potentially sporadic involvement of respondent in DLS's life would be in the child's best interests.

Next, the trial court found that respondent's parenting ability was "deficient." It reasoned: "There's something wrong in your parenting ability . . . when you decide that it's appropriate to go and molest a child that's right there in your household." Not only was the trial court concerned that "respondent is a danger to DLS based on his treatment of [LB]," it found that respondent's sexual abuse of a minor child in his household reflected negatively on his fitness as a parent. It was not clear error for the trial court to find that this factor, focused on DLS's best interests, weighed in favor of termination.

Regarding DLS's need for permanency, stability, and finality, the trial court found that "there's stability with the mother." Fields noted that all of DLS's needs were being met in his mother's home. The home was suitable for children and she had a legal source of income. The trial court opined that her parenting ability seemed "suitable and appropriate," because "she has continued to hold down the household work, keep the roof over the head, keep all the bills going, making sure that her child has food, clothing, nourishment, medical care, et cetera." These are individualized findings that DLS's mother provides stability. In contrast, respondent is incarcerated until at least June 2029. The trial court determined it could provide finality in this case by determining whether respondent "continues to have a role in [DLS's] life."

-8-

Respondent argues that there are less restrictive means for keeping DLS safe while permitting him to have a relationship with respondent. Respondent's trial counsel explained that if respondent's rights were not terminated, DLS's mother would be the custodian and "[a]ny visitation would have to go through a custody court, and he would have to get permission, and there would be hearings." But the trial court recognized that this approach would postpone rather than provide finality. A nontermination arrangement merely delays the decision, creating 4 to 20 years of uncertainty regarding whether respondent will be permitted to have contact with DLS while incarcerated and the extent to which respondent will be involved in DLS's life once released. Overall, the trial court considered DLS's individualized circumstances in finding that the stability, permanence, and finality provided by termination was in DLS's best interests. The trial court did not clearly err with regard to these findings.

## 2. UNPROVEN ALLEGATIONS

Respondent also argues that the trial court, in its best-interest determination, erred in relying on unproven allegations that respondent also molested a second child. We agree with respondent that the trial court clearly erred, and a remand is required for further proceedings on DLS's best interests.

The trial court, in rendering its best-interest decision, included the following in its findings:

> *The Court*: . . . What's important to me is, [respondent] had previously molested another child.
>
> [*Respondent*]: What?
>
> *The Court*: [Respondent] had previously molested another child. [Respondent], don't say anything. It is reported, just like in the petition that was before the Court that [the children's mother] put out on Facebook the assertions that [respondent] had molested [LB]. [Respondent's] first wife responded to the Facebook posting and . . . basically . . . acknowledged that the reason she divorced [respondent] was because he, too, molested her daughter.
>
> So, this is not an isolated incident of [respondent] committing criminal sexual conduct against a child. This is not a situation in which he just got caught up. This was a situation that went on with multiple children from what I can ascertain. . . .

The record reflects that this allegation had not been raised in arguments by counsel or the presentation of evidence at the best-interest hearing. Instead, the allegation appears in the Family Assessment Center's "best interest assessment" report that had been ordered by the trial court before the best-interest hearing and was admitted as an exhibit at that hearing. That report, in turn, merely quotes the relevant allegation from the petition. And the petition states, in pertinent part:

> On 8/20/2024 a Team Decision Making Meeting was held with the family. [The children's mother] reported posting on Facebook.com about the incident to warn others. She reported receiving numerous chats from people with similar concerns about [respondent]. Additionally, his ex-wife reached out indicating she wished

she would have warned [the mother] and that her divorce from [respondent] was due to him molesting her daughter.

This is obviously a very serious and troubling allegation, and unquestionably it is relevant to DLS's best interests. But the record does not reflect that any steps were taken to verify it. There is no indication that the Facebook posts or chats in question were shown to petitioner's staff, that petitioner followed up with the ex-wife, or that the substance of the allegation was investigated in any other way. Nonetheless the trial court found at the best-interest hearing that "[t]his was a situation that went on with multiple children from what I can ascertain."

A trial court cannot terminate a respondent's parental rights unless it finds, by a preponderance of the evidence, that termination is in the child's best interests. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). The rules of evidence do not apply at a dispositional hearing; all relevant and material evidence is admissible. *In re AMAC*, 269 Mich App 533, 537; 711 NW2d 426 (2006). Still, due process is required. See *In re HRC*, 286 Mich App 444, 454-457; 781 NW2d 105 (2009); *In re Moss*, 301 Mich App at 86-90. And due process, in turn, requires that the trial court rely only on evidence that bears sufficient indicia of fairness, reliability, and trustworthiness. See *In re Ovalle*, 140 Mich App 79, 82; 363 NW2d 731 (1985). "Hints and suggestions are not enough." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 335; 985 NW2d 912 (2022).

In this case, because the record contains no indication that anything was done to verify, corroborate, investigate, or otherwise follow up on the mother's report to petitioner that respondent's ex-wife told her that respondent molested his ex-wife's daughter, this allegation in the petition, standing alone, is not a reliable basis on which to rest a finding that termination was in DLS's best interests. Although as discussed above the trial court made other findings related to DLS's best interests, the record suggests that the unproven allegation was likely a significant factor in the trial court's ultimate best-interest determination. In particular, the trial court said, "*What's important to me* is, [respondent] had previously molested another child. . . . This was a situation that went on with multiple children from what I can ascertain." (Emphasis added.) On such a record, we are "left with the definite and firm conviction that a mistake has been made," *In re Olive/Metts*, 297 Mich App at 41 (quotation marks and citation omitted), meaning that the trial court's best-interest finding was clearly erroneous. See MCR 3.977(K).

That said, we conclude that the appropriate remedy is to vacate, rather than reverse outright, the trial court's termination order, and to remand for a new best-interest hearing. At that hearing, petitioner should have the option of attempting to produce reliable evidence to prove the allegation in question. Alternatively, or in the absence of such evidence, the trial court must determine anew—putting aside the unproven allegation—whether termination is in DLS's best interests. We express no view as to whether termination is in DLS's best interests in the absence of the unproven allegation, as the trial court must make such a determination in the first instance.

III. CONCLUSION

The trial court did not err by failing to find the existence of aggravated circumstances that would allow termination at the initial disposition. Nor did the trial court err by failing to make individualized findings about DLS's best interests. However, the trial court erred by relying on

unproven allegations that respondent had sexually abused children other than LB.  We therefore vacate the trial court's best-interest determination and remand for further proceedings consistent with this opinion.

Affirmed in part, vacated in part, and remanded.  We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Adrienne N. Young
/s/ Mariam S. Bazzi